T.C. Memo. 2016-30

UNITED STATES TAX COURT

KEY CARPETS, INC., Petitioner <u>v.</u>
COMMISSIONER OF INTERNAL REVENUE, Respondent

RAYMOND C. JOHNSON AND GERALDINE L. JOHNSON, Petitioners <u>v.</u>
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket Nos. 22663-12, 22786-12.        Filed February 25, 2016.

Harry Charles, for petitioners.

Stephen A. Haller, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

PARIS, <u>Judge</u>:  These cases have been consolidated for trial, briefing, and

opinion.  Respondent determined deficiencies and accuracy-related penalties under

section 6662(a) in petitioners' Federal income tax for 2007 and 2008 (years at

[*2] issue).[1]  For petitioner Key Carpets, Inc. (Key Carpets), respondent determined deficiencies of $44,091 and $26,032 for 2007 and 2008, respectively, and accuracy-related penalties of $8,818.20 and $5,206.40 for 2007 and 2008, respectively.  For petitioners Raymond C. Johnson and Geraldine L. Johnson, respondent determined deficiencies of $52,254 and $44,094 for 2007 and 2008, respectively, and accuracy-related penalties of $10,450.80 and $8,818.80 for 2007 and 2008, respectively.

After concessions,[2] the issues for decision are:  (1) whether Key Carpets is entitled to deduct computer service and consulting expenses, including payments made to a related company, Clean Hands Co., Inc. (Clean Hands), for 2007 and 2008; (2) whether Mr. and Mrs. Johnson received constructive distributions in 2007 and 2008 as a result of Key Carpets' payments to Clean Hands; and (3) whether all petitioners are liable for accuracy-related penalties under section 6662(a) for the years at issue.

---

[1]All section references are to the Internal Revenue Code (Code) in effect for the years at issue, and all Rule references are to the Tax Court Rules of Practice and Procedure, unless otherwise indicated.

[2]Respondent concedes that:  (1) Mr. and Mrs. Johnson are entitled to deduct an additional $52,258 in real estate losses for a total real estate loss deduction of $59,668 for 2007; and (2) Mr. and Mrs. Johnson are not entitled to deduct "Miscellaneous Itemized Deductions" expenses of $5,411 on Schedule A, Itemized Deductions, for 2007.

**[*3]**                                    FINDINGS OF FACT

Some of the facts have been stipulated and are so found. The stipulation of facts, the first supplemental stipulation of facts, and the attached exhibits are incorporated herein by this reference. Mr. and Mrs. Johnson resided in Missouri at the time of filing their petition. Key Carpets is a Missouri corporation with its principal place of business in Missouri.

I.      Development of the Hand Washing Monitoring System

Mr. and Mrs. Johnson incorporated Key Carpets in 1994 primarily to sell carpets to realtors, and they jointly owned Key Carpets for the years at issue. For the years at issue Key Carpets was a successful business with over $2 million in gross receipts each year. In 1995 Mr. Johnson incorporated another company, Clean Hands, and for the years at issue was its sole shareholder. Mr. Johnson originally incorporated Clean Hands because he intended to reserve the name for a hand washing monitoring system that Key Carpets had begun to develop. The initial hand washing monitoring system was intended to work by dispensing soap when a person activated the system using a radio frequency identification (RFID) badge. The initial hand washing monitoring system would then record the individual's name in a database for future reference. Mr. Johnson intended to sell

[*4] the hand washing monitoring system to food service businesses so that employers could verify an employee's compliance with sanitation requirements.

Between 1994 and 2006 Key Carpets hired five to six employees to build the initial hand washing monitoring system. Clean Hands was not involved in developing the initial hand washing monitoring system and was inactive from 1995 to 2006.

In 2006 Clean Hands hired a computer technician as an employee to assist with the development of the hand washing monitoring system. Mr. Johnson considered hiring the computer technician as either a Key Carpets employee or as a Clean Hands employee with the intent that Key Carpets could then contract with Clean Hands to build the hand washing monitoring system. Mr. Johnson decided to hire the computer technician as a Clean Hands employee rather than as a Key Carpets employee because an employee was needed to work on the hand washing monitoring system full time.

The computer technician had a bachelor of science degree in physics, a long career as a computer programmer with several other companies, and an annual salary of over $100,000 at his previous employment. After hiring the computer technician Mr. Johnson decided that the initial hand washing monitoring system developed by Key Carpets was no longer feasible. Therefore, the computer

[*5] technician began working on a new hand washing monitoring system that was voice activated. To use the new system, a user would state his or her name, the system would record the person's name in a database, and then the system would dispense soap.[3] As an employee of Clean Hands, the computer technician developed the new voice-activated hand washing monitoring system. Mr. Johnson owned the patent on the voice-activated hand washing monitoring system but thought that Key Carpets owned the voice-activated hand washing monitoring system.

In addition to assisting with the development of the hand washing monitoring system, the computer technician provided information technology (IT) services to Key Carpets. The computer technician would fix Key Carpets' computer problems and was the administrator for Key Carpets' computer network, Web site, and email system. Key Carpets had a preexisting office location that included a large carpet warehouse. Because Clean Hands had office space in the back of that building, the computer technician's physical location allowed him to work for both companies. Additionally, Mr. Johnson was concerned that his health problems could jeopardize his capacity to manage Key Carpets and Clean

---

[3]After the years at issue Clean Hands marketed this hand washing monitoring system as "Clean Hands" and sold the system to local restaurants.

[*6] Hands, and he considered the computer technician's educational and professional background when he hired the computer technician to step in, if necessary, as a "stabilizing influence" for Key Carpets. However, the computer technician was not aware of this duty and in fact never assumed any managerial responsibilities for Key Carpets, never had check writing authority for Key Carpets or Clean Hands, and never had the authority to terminate employees during the years at issue.[4]

Although Clean Hands did not require him to, the computer technician maintained a time log of his work during 2007. The log detailed his work throughout the year, including his time spent developing the hand washing monitoring system and providing IT services to Key Carpets. The log shows that the computer technician generally worked eight hours a day. The computer technician did not maintain a time log for 2008. According to his testimony the computer technician estimated "with a reasonably high degree of accuracy" that 85% to 95% of his time at Clean Hands in 2007 and 2008 was spent working on the hand washing monitoring system. Clean Hands wrote checks on its bank account to pay the computer technician a salary of $100,000 in 2007 and $90,000

---

[4]The computer technician did hire employees and contractors for Clean Hands outside the years at issue.

**[\*7]** in 2008.  Clean Hands reported $107,777 for 2007 and $101,859 for 2008 in total salaries and wages for its only employee on its Forms 1120, U.S. Corporation Income Tax Return, for those years.

Key Carpets paid Clean Hands throughout the years at issue for purportedly developing the hand washing monitoring system and providing Key Carpets with IT services.  In 2007 Clean Hands received $130,300 in checks from Key Carpets.  In 2008 Clean Hands received $128,222 from Key Carpets.

II.    Internal Revenue Service Examination of 2007 and 2008 Returns

Mr. and Mrs. Johnson timely filed joint Federal income tax returns on Forms 1040, U.S. Individual Income Tax Return, for the years at issue.  Key Carpets and Clean Hands filed their 2007 and 2008 Federal income tax returns on Forms 1120.  All of the Federal income tax returns were prepared by petitioners' accountant from documents that petitioners had provided.  The Internal Revenue Service (IRS) subsequently selected Key Carpets' and Mr. and Mrs. Johnson's 2007 and 2008 Federal income tax returns for examination.

For 2007 Key Carpets claimed a deduction of $140,241 for "computer service and consulting" partly with respect to the amount paid to Clean Hands.[5]

---

[5]The parties did not address the deduction that exceeded the amount paid to Clean Hands.

[*8] Upon examination the IRS determined that only $3,928 of the claimed $140,241 "computer service and consulting" expenses was allowable as a deduction. In reaching that determination, the IRS sampled two months of the computer technician's time log to calculate the amount of the computer technician's salary expense that was allocable to IT services provided to Key Carpets. However, Key Carpets did not use the computer technician's time log to prepare its 2007 return. The IRS did not allow Key Carpets to deduct for 2007 the portion of the computer technician's salary expense that the auditor determined was allocable to developing the hand washing monitoring system.

Key Carpets claimed a deduction of $102,000 for "computer service and consulting" on its 2008 Federal income tax return. The IRS disallowed the entire deduction because the computer technician did not maintain a time log. Therefore, the IRS was unable to determine the amount of the computer technician's salary expense that was allocable to IT services for 2008.

On June 11, 2012, respondent issued a notice of deficiency for 2007 and 2008 to Key Carpets that disallowed the claimed deductions for "computer service and consulting" except for $3,928 that the IRS allowed for 2007.[6] Respondent

---

[6]Key Carpets signed two Forms 872, Consent to Extend the Time to Assess Tax, that extended the deadline for assessment for 2007 and 2008 to December 31,

(continued...)

**[\*9]** also issued a notice of deficiency to Mr. and Mrs. Johnson on June 11, 2012.[7] In that notice of deficiency, respondent determined that the payments from Key Carpets, a corporation owned by Mr. and Mrs. Johnson, to Clean Hands, a corporation solely owned by Mr. Johnson, were constructive distributions from Key Carpets to Mr. Johnson and Mrs. Johnson as Key Carpets did not own the voice-activated hand washing monitoring system for the years at issue. Respondent also determined that Key Carpets and Mr. and Mrs. Johnson were liable for accuracy-related penalties under section 6662(a) for the years at issue. Petitioners timely petitioned this Court.

OPINION

Generally, the Commissioner's determination set forth in a notice of deficiency is presumed correct,[8] and the taxpayer bears the burden of showing the

---

[6](...continued) 2012.

[7]Mr. and Mrs. Johnson signed three Forms 872 that extended the deadline for assessment for 2007 and 2008 to December 31, 2012.

[8]The determinations of constructive distributions are determinations of unreported income. For the presumption of correctness to attach to a notice of deficiency in unreported income cases, the Commissioner must establish some evidentiary foundation connecting the taxpayer with the income-producing activity. See, e.g., Dodge v. Commissioner, 981 F.2d 350, 354 (8th Cir. 1992), aff'g in part, rev'g in part 96 T.C. 172 (1991); see also Weekend Warrior Trailers,

(continued...)

**[\*10]** determination is in error. Rule 142(a); <u>Welch v. Helvering</u>, 290 U.S. 111, 115 (1933). Section 7491(a) shifts the burden of proof to the Commissioner if the taxpayer produces credible evidence on any factual issues and satisfies the requirements of section 7491(a)(2).[9] "Credible evidence is the quality of evidence which, after critical analysis, the court would find sufficient upon which to base a decision on the issue if no contrary evidence were submitted (without regard to the judicial presumption of IRS correctness)." <u>Higbee v. Commissioner</u>, 116 T.C. 438, 442 (2001) (quoting H.R. Conf. Rept. No. 105-599, at 240-241 (1998), 1998-3 C.B. 747, 994-995). Petitioners have not shown that they meet the requirements of section 7491(a) nor established their compliance with the substantiation and recordkeeping requirements. <u>See</u> sec. 7491(a)(2)(A) and (B). Petitioners therefore bear the burden of proof.

I.     <u>Business Expense Deductions</u>

Deductions are a matter of legislative grace, and the taxpayer bears the burden of proving entitlement to any deduction claimed on a return. <u>INDOPCO,</u>

---

[8](...continued)
<u>Inc. v. Commissioner</u>, T.C. Memo. 2011-105, slip op. at 65. The parties stipulated that Mr. and Mrs. Johnson jointly and solely owned Key Carpets for the years at issue. Accordingly, respondent's determinations are presumed correct.

[9]Sec. 7491(a)(2) requires a taxpayer to substantiate any item and maintain all records required under the Code.

**[*11]** Inc. v. Commissioner, 503 U.S. 79, 84 (1992); New Colonial Ice Co. v. Helvering, 292 U.S. 435, 440 (1934). Section 162(a) permits a deduction for ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business. Welch v. Helvering, 290 U.S. at 113. An expense is ordinary if it is customary or usual within a particular trade, business, or industry. Deputy v. du Pont, 308 U.S. 488, 495 (1940). An expense is necessary if it is appropriate and helpful for the business. Commissioner v. Heininger, 320 U.S. 467, 471 (1943).

A taxpayer ordinarily must maintain adequate records to substantiate the amounts of income and entitlement to any deductions claimed. See sec. 6001; sec. 1.6001-1(a), Income Tax Regs. If, however, a taxpayer with inadequate or nonexistent business records is able to prove that it paid or incurred a deductible business expense but does not prove the amount of the expense, the Court may estimate the amount allowable in some circumstances (Cohan rule). See Cohan v. Commissioner, 39 F.2d 540, 542-544 (2d Cir. 1930). The taxpayer must introduce sufficient evidence to permit the Court to conclude that the taxpayer paid or incurred a deductible expense in at least the amount allowed. See Williams v. United States, 245 F.2d 559, 560 (5th Cir. 1957); Vanicek v. Commissioner, 85 T.C. 731, 743 (1985). In estimating the amount allowable, the Court bears heavily

[*12] upon the taxpayer who failed to maintain required records and to substantiate expenses as the Code requires. See Cohan v. Commissioner, 39 F.2d at 544.

The Court here decides what services the computer technician provided to Key Carpets, and we allow deductions as appropriate. The computer technician had two tasks as an employee of Clean Hands: (1) providing IT services to Key Carpets and (2) developing the voice-activated hand washing monitoring system.

A.     Deductions for Developing the Voice-Activated Hand Washing Monitoring System

Petitioners contend that Key Carpets' payments to Clean Hands for the voice-activated hand washing monitoring system are deductible because Key Carpets owned the voice-activated hand washing monitoring system and contracted with Clean Hands to build the system. Respondent contends that the expenses of developing the voice-activated hand washing monitoring system were not deductible by Key Carpets because the computer technician was hired as a Clean Hands employee and Key Carpets did not own the voice-activated hand washing monitoring system.

Mr. Johnson did not present any credible evidence that Key Carpets owned the voice-activated hand washing monitoring system. His testimony that Key

**[*13]** Carpets owned the voice-activated hand washing monitoring system was vague, unclear, and not credible. Mr. Johnson's testimony contradicts his statements that he owned the patent on the voice-activated hand washing monitoring system. Additionally, the parties stipulated that Mr. Johnson was the sole owner of Clean Hands. Although Key Carpets had an ownership interest in the initial RFID badge-activated hand washing system, Key Carpets had no interest in the new voice-activated system that the computer technician developed as a Clean Hands employee. The Court therefore finds that Key Carpets did not own the voice-activated hand washing monitoring system.

Since Key Carpets did not own the voice-activated hand washing monitoring system, the Court must determine whether the expenses related to developing it were ordinary and necessary for Key Carpets. See sec. 162(a). Mr. Johnson owned all the stock of Clean Hands, and he owned the patent on the voice-activated hand washing monitoring system. Key Carpets received no benefits from the payments for the development of the system. Therefore, the expenses were not ordinary and necessary. Key Carpets may not deduct the amounts paid to Clean Hands for the development of the voice-activated hand washing monitoring system.

[*14] Petitioners in their opening brief cite Chapman v. Commissioner, T.C. Memo. 2014-82, as support for the deductibility of Key Carpets' payments to Clean Hands. In Chapman the taxpayers owned a real estate management company and a car rental company. Id. at *2-*3. The two companies had opposing busy seasons, and the taxpayer contracted with the car rental company for its employees to perform routine winterization for the real estate management clients that the real estate management employees were unable to complete because of other work obligations. Id. The facts of that case are not analogous to those of petitioners' cases. The real estate management company in Chapman received significant benefits from the car rental company. The real estate company generated income from the winterization and then paid the car rental employees for completing that work. Id. In the cases before us, the computer technician spent most of his time working on the voice-activated hand washing monitoring system for Clean Hands. The voice-activated hand washing monitoring system was not for Key Carpets or its clients. The only benefits Key Carpets received were IT services.

Petitioners also contend that these cases are reasonable compensation cases and cite Law Offices--Richard Ashare, P.C. v. Commissioner, T.C. Memo. 1999-282, in support of their argument that Key Carpets should be allowed to deduct the

[*15] payments. However, respondent does not argue that the computer technician's salary was unreasonable, nor has the salary Clean Hands paid been challenged. Respondent contends only that the deductions were not ordinary and necessary business expenses for Key Carpets. The Court agrees with respondent.

B.      Deductions for IT Services

Respondent acknowledges that the computer technician provided IT services to Key Carpets. Respondent contends that Key Carpets may deduct only the payments made for the portion of the computer technician's salary that represents his time providing those IT services. The computer technician was an employee of Clean Hands, and Clean Hands paid the computer technician's salary. The Court partially agrees with respondent in that Key Carpets is entitled to deduct the portion of the computer technician's total wage expenses that is allocable to providing IT services to Key Carpets. Therefore, the Court must determine the portion of the computer technician's time spent providing IT services to Key Carpets.

In 2007 the computer technician maintained a log of his work, and after the IRS sampled two months of the log, it allowed Key Carpets a deduction of $3,928 for IT services, which is substantially less than 5% of the computer technician's salary expense. The computer technician testified "with a reasonably high degree

**[*16]** of accuracy" that 5% to 15% of his time was spent providing IT services to Key Carpets, and under the Cohan rule, the Court may estimate the amount allowable when the taxpayer provides some basis for the Court to estimate the deduction. See Cohan v. Commissioner, 39 F.2d at 542-544. The computer technician's time log and his credible testimony provide the Court with a basis to estimate the deduction.

The computer technician provided IT services for Key Carpets' computer network, Web site, and email as well as fixing computer problems for Key Carpets' employees. The Clean Hands office where the computer technician worked was also part of the Key Carpets office. The computer technician was therefore available to provide informal consulting and IT services to Key Carpets, an active commercial carpet business with over $2 million in gross receipts each year. The Court finds on the basis of the computer technician's credible testimony that the computer technician spent at least 15% of his time providing IT services to Key Carpets. Fifteen percent of the computer technician's time in an eight-hour day is 72 minutes, which is not an unreasonable amount of time to spend maintaining Key Carpets' email, Web site, and computer network and fixing computer problems for Key Carpets' employees. The Court is not convinced that given the size of Key Carpets its IT services could have been accomplished in 24

**[*17]** minutes or less, which would represent the 5% estimate. The Court therefore finds that Key Carpets is entitled to deduct 15% of the computer technician's salary expense.[10] The remaining amount that Key Carpets claimed as a deduction for 2007 is disallowed.

In 2008 the computer technician did not maintain a time log of his work, and respondent disallowed the entire deduction. The record supports a finding that the computer technician provided similar IT services to Key Carpets in 2008 as he did in 2007. The Court therefore finds that Key Carpets is entitled to deduct 15% of the computer technician's 2008 salary expense for IT services.[11]

Respondent urges the Court to accept his determination to limit Key Carpets' deduction to approximately 4% of the computer technician's salary on the basis of respondent's two-month sampling of the computer technician's time log.

---

[10]Fifteen percent of $107,777 is $16,166.55. Accordingly, Key Carpets is entitled to deduct $16,166.55 for IT services for 2007. Clean Hands reported $107,777 as the amount of total wages and salaries for its only employee, the computer technician, on its 2007 return. Key Carpets claimed a deduction of $140,241 for "computer and consulting services" for 2007; however, the amount exceeding $107,777 was never substantiated.

[11]Fifteen percent of $101,859 is $15,278.85. Accordingly, Key Carpets is entitled to deduct $15,278.85 for IT services for 2008. Clean Hands reported $101,859 as the amount of total wages and salaries for its only employee, the computer technician, on its 2008 return. Key Carpets claimed a deduction of $102,000 for "computer and consulting services" for 2008. Petitioners did not substantiate the amount exceeding the computer technician's salary expense.

[*18] A 4% limitation would mean that the computer technician spent approximately 19 minutes per day providing IT services to Key Carpets. Moreover, from the record it appears that respondent did not credit the computer technician for all of his time spent providing IT services to Key Carpets. The computer technician's time log often included an entry in the morning of "mail, etc". Some of this time was clearly spent on matters for Key Carpets. Additionally, the computer technician frequently met with Mr. Johnson to review his work. While most of the meetings were to discuss the voice-activated hand washing monitoring system for Clean Hands, Mr. Johnson and the computer technician also discussed other matters, including IT services for Key Carpets. In short, the Court finds that petitioners presented sufficient evidence for the Court to estimate that the computer technician spent at least an hour and 12 minutes a day providing IT services to Key Carpets, and Key Carpets is entitled to a corresponding deduction of 15% of the computer technician's total salary expenses. See Cohan v. Commissioner, 39 F.2d at 542-544.

II.     Constructive Distributions

For a corporation, a distribution of property made to a shareholder with respect to its stock is governed by section 301(c). Sec. 301(a). Section 317 defines property as money, securities, and any other property.

**[\*19]** A taxpayer must include in gross income amounts received as dividends

under section 301(c)(1).  See also sec. 61(a)(7).  A dividend is any distribution a

corporation makes to its shareholders out of earnings and profits.  Sec. 316(a).

The distribution is first made out of the earnings and profits for the current taxable

year.  See id.  When current earnings and profits are insufficient, the distribution is

made out of accumulated earnings and profits.  See id.  When a corporation does

not have sufficient earnings and profits for the entire distribution to constitute a

dividend, the remaining amount is not a dividend but reduces the adjusted basis of

the shareholder's stock in the corporation.  Sec. 301(c)(2).  The amount of the

distribution that is not a dividend or does not reduce basis is generally treated as

gain from the sale or exchange of property.  Sec. 301(c)(3); see also sec. 1001.

A distribution need not be formally declared or even intended by a

corporation but can be constructive.  Noble v. Commissioner, 368 F.2d 439, 442-

443 (9th Cir. 1966), aff'g T.C. Memo. 1965-84.  Whether a payment is a

constructive distribution depends on whether it was primarily for the benefit of the

shareholder.  Hood v. Commissioner, 115 T.C. 172, 179-180 (2000).[12]  The

_____

[12]The Court uses the term "constructive distribution" to describe what our
caselaw has sometimes referred to as a constructive dividend.  The use of the term
"constructive distribution" is more accurate in these cases because Key Carpets'
earnings and profits are insufficient for the entire amount to constitute a

(continued...)

[*20] determination of whether the shareholder or the corporation primarily benefits is a question of fact. Id. at 180. To avoid having a payment treated as a constructive distribution, the taxpayer must show that the payor primarily benefited from its payment of the shareholder's expenses. Id. at 181. "In determining whether or not the expenditure related to the business of the corporation, we must ascertain whether the payment or expenditure has independent and substantial importance to the paying corporation." Gow v. Commissioner, T.C. Memo. 2000-93, slip op. at 38 (citing T.J. Enters., Inc. v. Commissioner, 101 T.C. 581 (1993), aff'd sub nom. Intel Corp. v. Commissioner, 67 F.3d 1445 (9th Cir. 1995)), aff'd, 19 F. App'x 90 (4th Cir. 2001). "An expenditure generally does not have independent and substantial importance to the distributing corporation if it is not deductible under section 162." Id. (citing P.R. Farms, Inc. v. Commissioner, 820 F.2d 1084, 1089 (9th Cir. 1987), aff'g T.C. Memo. 1984-549).

This Court has previously held that a transfer between related corporations can result in a constructive distribution to their common shareholder when the shareholder receives a direct or tangible benefit. Gilbert v. Commissioner, 74 T.C.

---

[12](...continued)
constructive dividend. See sec. 301.

**[*21]** 60, 64 (1980). However, if the transfer is a loan or if the benefit to the shareholder is indirect or derivative, there is no constructive distribution. Id. at 64. In considering whether a transfer is a loan, the Court looks to "whether there was a genuine intention to create a debt, which, in turn, depends upon weighing such objective factors as reasonable expectation of repayment and the economic reality of the claimed debtor-creditor relationship." Id. at 65. The determination of whether a transfer is a loan is a question of fact. Id. at 64.

Respondent contends that the Key Carpets payments that do not relate to the IT services the computer technician provided to Key Carpets are constructive distributions to Mr. and Mrs. Johnson because Mr. Johnson received a personal benefit from the payments. Petitioners contend that the payments from Key Carpets to Clean Hands are deductible as to Key Carpets and therefore there is no constructive distribution. Because the Court finds that Key Carpets is entitled to deduct only payments to Clean Hands for IT services provided to Key Carpets, the Court must determine whether the payments not related to IT services are constructive distributions to the Key Carpets shareholders, Mr. and Mrs. Johnson. The central issue with respect to whether the payments are constructive distributions to Mr. and Mrs. Johnson is whether the payments were for Mr. Johnson's personal benefit as the sole shareholder of Clean Hands.

**[\*22]** The Court has found that Key Carpets had no ownership interest in the voice-activated hand washing monitoring system. Mr. Johnson owned Clean Hands for the years at issue and owned the patent on the hand washing monitoring system. As the sole owner of Clean Hands, Mr. Johnson needed funds to support Clean Hands. To support Clean Hands and the development of the hand washing monitoring system, instead of Mr. Johnson making capital contributions directly to Clean Hands he caused Key Carpets to transfer funds to Clean Hands. See sec. 351. The payments therefore provided significant economic benefit to Mr. Johnson and his business, Clean Hands. See Stinnett's Pontiac Serv., Inc. v. Commissioner, T.C. Memo. 1982-314 (holding that when a shareholder was required to make capital contributions and caused a related company to pay the contributions, the payments were for the personal benefit of the common shareholder), aff'd, 730 F.2d 634 (11th Cir. 1984).

Petitioners never presented evidence of a promissory note, a loan repayment schedule, or loan repayments.[13] Key Carpets instead considered the payments

---

[13]Key Carpets' 2007 Federal income tax return reported that at the beginning of 2007 Clean Hands owed a loan repayment of $5,500 to Key Carpets. Clean Hands did not owe the loan at the end of 2007 or at the beginning of 2008, but Clean Hands owed Key Carpets the $5,500 at the end of 2008. Petitioners never offered any evidence about the loan entries, and the amount is substantially less than the payments Key Carpet made to Clean Hands. Thus, the $5,500

(continued...)

[*23] "computer service and consulting" deductible expenses rather than capital contributions or loans. Key Carpets had no documentation that reflected an expectation of repayment. The Court finds that the Key Carpets payments' to Clean Hands[14] not related to the IT services did not benefit Key Carpets but provided personal and tangible benefits to Mr. Johnson and are therefore constructive distributions to Mr. Johnson.[15]

## III.    Section 6662(a)--Accuracy-Related Penalty

Section 6662(a) and (b)(1) and (2) authorizes a 20% accuracy-related penalty on the portion of an underpayment of Federal income tax attributable to (1) negligence or disregard of rules or regulations or (2) a substantial understatement of Federal income tax. Under section 7491(c), the Commissioner

---

[13](...continued)
appears to be a preexisting liability.

[14]Key Carpets paid Clean Hands $130,300 and $128,222 in 2007 and 2008, respectively. The Court has allowed Key Carpets to deduct $16,166.55 and $15,278.85 for IT services for 2007 and 2008, respectively. See supra part I.B. Accordingly, Mr. Johnson is deemed to have received constructive distributions of the amount Key Carpets paid Clean Hands less the amount of the Key Carpets' deductions allowed by the Court for 2007 and 2008.

[15]The parties have calculated Key Carpets' earnings and profits for the 2007 and 2008 taxable years. However, the parties agree that a final earnings and profits computation will have to be prepared and submitted after the Court determines Key Carpets' taxable income.

**[*24]** bears the burden of production with regard to penalties for an individual taxpayer. NT, Inc. v. Commissioner, 126 T.C. 191, 194 (2006) (holding that section 7491(c) does not apply where the taxpayer is a corporation); Higbee v. Commissioner, 116 T.C. at 446. Once the Commissioner has met the burden of production, the taxpayer has the burden of proving that the penalties are inappropriate because of reasonable cause or substantial authority. See Rule 142(a); Higbee v. Commissioner, 116 T.C. at 446-447. For an individual taxpayer, there is a "substantial understatement" of income tax for any year if the amount of the understatement for the taxable year exceeds the greater of 10% of the tax required to be shown on the tax return or $5,000. Sec. 6662(d)(1)(A); Higbee v. Commissioner, 116 T.C. at 448. For a C corporation, there is a "substantial understatement" of income tax for any year if the amount of the understatement for the taxable year exceeds the lesser of 10% of the tax required to be shown on the tax return (or, if greater, $10,000) or $10 million. Sec. 6662(d)(1)(B).

After respondent's concessions and accounting for the reduced constructive distributions due to Key Carpets' allowed deductions for IT services, the understatements of income tax are greater than $5,000, which in turn is greater than 10% of the tax required to be shown on Mr. and Mrs. Johnson's return for

[*25] each of the years at issue. Thus, the understatement is substantial for purposes of the section 6662(a) accuracy-related penalty and respondent has met his burden of production in showing that Mr. and Mrs. Johnson's underpayments are due to their substantially understating their Federal income tax. Additionally, the understatements of income tax for Key Carpets are greater than 10% of the tax required to be shown on its returns for the years at issue.

Pursuant to section 6664(c)(1), no penalty shall be imposed under section 6662 with regard to any portion of an underpayment if the taxpayer can show that there was reasonable cause for such portion and that the taxpayer acted in good faith with respect to such portion. Whether a taxpayer acted with reasonable cause and in good faith is decided on a case-by-case basis, taking into account all pertinent facts and circumstances. Sec. 1.6664-4(b)(1), Income Tax Regs. Generally, the most important factor is the extent of the taxpayer's effort to assess his proper tax liability. Id.; see also Remy v. Commissioner, T.C. Memo. 1997-72. Reliance on the advice of a tax professional may, but does not necessarily, establish reasonable cause and good faith for the purpose of avoiding a section 6662(a) penalty. United States v. Boyle, 469 U.S. 241, 251 (1985). A taxpayer's reliance on a competent tax professional may establish reasonable cause and good faith when the taxpayer provides necessary and accurate information to the adviser

**[\*26]** and actually relies in good faith on the adviser's judgment. See Longino v. Commissioner, 593 F. App'x 965, 970 (11th Cir. 2014), aff'g T.C. Memo. 2013-80; Neonatology Assocs., P.A. v. Commissioner, 115 T.C. 43, 99 (2000), aff'd, 299 F.3d 221 (3d Cir. 2002).

A penalty that is attributable to a substantial understatement of income tax under section 6662(b)(2) may be reduced if (1) the taxpayer's position is supported by substantial authority or (2) relevant facts are adequately disclosed in a statement attached to the return and the taxpayer's position has a reasonable basis. Sec. 6662(d)(2)(B).

Petitioners argue that they acted with reasonable cause and in good faith because petitioners provided all records to their accountant and had a reasonable basis for the business deductions. However, petitioners did not act in good faith, because their positions run contrary to established law. Mr. Johnson testified that he provided all records to his accountant on whom he relied to prepare his corporate and individual returns, but petitioners did not offer any evidence about whether they sought advice from their accountant about the deductions or whether the Key Carpets payments to Clean Hands constituted constructive distributions. Because petitioners' positions run contrary to established law and petitioners have not shown that they reasonably relied on their accountant to do anything more than

**[\*27]** prepare tax returns, petitioners have not met their burden of proving that they acted in good faith with reasonable cause, and the Court sustains the section 6662(a) accuracy-related penalty.[16]

The Court has considered all of the arguments made by the parties and to the extent they are not addressed herein, they are considered unnecessary, moot, irrelevant, or without merit.

Decisions will be entered

under Rule 155.

---

[16]Respondent determined sec. 6662 penalties because petitioners' underpayments were attributable to: (1) negligence or disregard of rules or regulations; or (2) a substantial understatement of income tax. Because the Court finds that there was a substantial understatement of income tax for Mr. and Mrs. Johnson and Key Carpets, a discussion of whether petitioners were negligent is not warranted.