**P.R. FARMS, INC., et al.,
Petitioners-Appellants,
v.
COMMISSIONER OF INTERNAL
REVENUE SERVICE,
Respondent-Appellee.**

Nos. 86–7062, 86–7063, 86–7066
and 86–7069.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Dec. 11, 1986.

Decided June 26, 1987.

Before NORRIS, BEEZER and BRUNETTI, Circuit Judges.

BEEZER, Circuit Judge:

P.R. Farms, Inc. appeals the Tax Court's determination that 1) interest earned by General Fruit Sales (a fruit broker) on proceeds from sales of P.R. Farms fruit is taxable to P.R. Farms, and 2) Palomate Storage Co. was a mere conduit through which P.R. Farms' fruit was sold. Pat and Frances Ricchiuti, husband and wife and principal shareholders in P.R. Farms appeal the Tax Court's determination that interest retained by General Fruit Sales (GFS) and income retained by Palomate constitute constructive dividends taxable to Pat and Frances Ricchiuti. The findings supporting the judgment are not clearly erroneous. We affirm.

## I

### Background

A. *Parties*

P.R. Farms owns and operates extensive orchards near Clovis, California. From 1974 through 1977, Ricchiuti held approximately 91% of P.R. Farms' common stock. Ricchiuti served both as president and as a director of P.R. Farms.

GFS brokered P.R. Farms' fruit. Brokerage agreements between P.R. Farms and GFS required GFS to remit proceeds of fruit sales to P.R. Farms the tax year following the year fruit was sold. During the years in question, Ricchiuti served as vice-president of GFS and held 50% of GFS' stock. P.R. Farms paid GFS 12¢/box in brokerage fees to sell P.R. Farms' fruit. Ricchiuti controlled the transfer of funds from GFS to P.R. Farms.

Palomate Packing Company Inc. was incorporated in 1970 for the purpose of assuming responsibility for packing P.R. Farms' fruit. The four Ricchiuti children owned equal shares of Palomate stock. Palomate owns no packing or storage facilities.

George W. Beatty, Washington, D.C., for petitioners-appellants.

Michael L. Paup, Jonathan S. Cohen and David M. Moore, Washington, D.C., for respondent-appellee.

B. *Transactions*

GFS did not consistently defer transfer of proceeds from fruit sales to P.R. Farms until the year following sale. When GFS did defer payment, GFS invested the proceeds in interest-bearing certificates of deposit. GFS retained the interest.

Palomate purchased fruit from P.R. Farms for resale at a later date. All fruit was stored together in P.R. Farms' cold storage facility. Palomate bought only those varieties of fruit that could be kept in cold storage for significant time periods. P.R. Farms and Ricchiuti state that the purpose of the sales to Palomate was to permit the Ricchiuti children to assume risks in late-season marketing that he was unwilling to accept.

Although Palomate had its own trade label, "Alta Sierra," Palomate kept the P.R. Farms label on fruit purchased from P.R. Farms and stored the fruit in P.R. Farms' cold storage facility along with P.R. Farms' own fruit. Like P.R. Farms, Palomate sold fruit through GFS. Palomate did not pay P.R. Farms for fruit until after GFS remitted proceeds of sale to Palomate. During 1974 and early 1975, Palomate paid P.R. Farms for fruit sold by GFS, rather than for fruit P.R. Farms shipped to Palomate. Palomate did not buy fruit from other growers. P.R. Farms did not sell fruit other than through Palomate and GFS. Each year in question, Palomate realized profits exceeding $100,000 from fruit sales.

C. *Tax Court Disposition*

The IRS assessed P.R. Farms for, *inter alia*, tax on interest earned on certificates of deposit. The Tax Court determined that 1) GFS was P.R. Farms' agent, 2) Ricchiuti controlled whether GFS retained sales proceeds and how long the proceeds would be retained, 3) interest income on the certificates of deposit was taxable to P.R. Farms.

The Tax Court also determined that Ricchiuti controlled sales of Palomate fruit and that net gains realized by Palomate on fruit sales were taxable to P.R. Farms.

Finally, the Tax Court determined that Ricchiuti, as principal shareholder of P.R.

Farms, received constructive dividends equal to interest earned by GFS on certificates of deposit and net income realized by Palomate on fruit sales. The court deemed Ricchiuti to have contributed interest retained by GFS to GFS' capital. The court also determined that net income from fruit sales retained by Palomate constituted a gift from Ricchiuti to his children, by way of Palomate.

## II

### *Discussion*

The Tax Court had jurisdiction under 26 U.S.C. §§ 6213, 6214. We have jurisdiction under 26 U.S.C. § 7482.

A. *Interest Earned by GFS on Certificates of Deposit*

P.R. Farms contends that GFS retained proceeds from sales of P.R. Farms' fruit pursuant to a compensation-related loan agreement. Whether an arrangement constitutes a compensation-related loan is a question of fact. We review the Tax Court's factual determinations for clear error. *Stern v. C.I.R.*, 747 F.2d 555, 557 (9th Cir.1984). "A finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire record is left with the definite and firm conviction that a mistake has been committed." *United States v. United States Gypsum Co.*, 333 U.S. 364, 395, 68 S.Ct. 525, 542, 92 L.Ed. 746 (1948); *see also Anderson v. City of Bessemer City*, 470 U.S. 564, 573, 105 S.Ct. 1504, 1511, 84 L.Ed.2d 518 (1985).

█ P.R. Farms claims that it realized no income from interest earned on certificates of deposit, or, in the alternative, that any income P.R. Farms realized from investment of sales proceeds was offset by a deduction for cost of brokerage services furnished by GFS. Generally, interest earned on investment is taxable to the person who controls the principal. *Helvering v. Horst*, 311 U.S. 112, 116–17, 61 S.Ct. 144, 146–47, 85 L.Ed. 75 (1940). In *Horst*, the Supreme Court deemed interest on bonds taxable to a bond holder even though he

transferred the right to receive interest (coupons) to a third party before the interest obligation matured.

■ The record supports the Tax Court's determination that P.R. Farms and Ricchiuti controlled proceeds from fruit sales and, accordingly, any income earned on investment of the proceeds. First, GFS often remitted sales proceeds to P.R. Farms within the same year as fruit was sold, contrary to the parties' brokerage agreements. Second, although P.R. Farms contends that GFS retained proceeds in order to defray operating expenses, the amount of interest income retained by GFS *decreased* when GFS lowered brokerage fees from 12 cents to 10 cents per box, rather than increasing to compensate for lost revenue. Third, GFS' bookkeepers testified that they paid out or retained sales proceeds at Ricchiuti's direction. Finally, Ricchiuti signed checks from GFS to P.R. Farms. In short, the record indicates that Ricchiuti had authority to direct GFS to transfer all proceeds to P.R. Farms immediately for investment in certificates of deposit.

P.R. Farms relies on dicta in *Dean v. Commissioner*, 35 T.C. 1083 (1961), to the effect that interest-free loans result in no interest income to the lender. *Dean*, 35 T.C. at 1090. The lenders in *Dean*, and cases cited therein, exercised substantially less control over debt principal than P.R. Farms and Ricchiuti exercised over proceeds from sales of P.R. Farms' fruit. *See Combs Lumber Co.*, 41 B.T.A. 339, 342–43 (1940); *Society Brand Clothes, Inc.*, 18 T.C. 304, 320–21 (1952). The facts of *Horst* more closely resemble the facts of this case.

P.R. Farms argues that, in the absence of an obligation to allow GFS to retain sales proceeds, Ricchiuti would not have allowed GFS to retain sales proceeds because Ricchiuti held only 50% of GFS's stock while he owned 90% of P.R. Farms. P.R. Farms argues that Ricchiuti would not voluntarily donate 50% of the interest earned on P.R. Farms' income to an unrelated 50% shareholder in GFS. However, Ricchiuti was not the only contributor to

GFS. The record does not reflect the extent of similar contributions made by the other 50% shareholder in GFS. These contributions, combined with salary paid to Ricchiuti as vice-president of GFS, may have offset any interest lost by Ricchiuti.

P.R. Farms had no legal obligation to allow GFS to retain sales proceeds. The Tax Court properly held that interest on the certificates of deposit was taxable to P.R. Farms.

### B. *Net Proceeds From Palomate Fruit Sales*

The Tax Court determined that Palomate Storage Inc. was a mere conduit through which P.R. Farms marketed fruit. We will not reverse the Tax Court's determination that Palomate was a mere conduit in the absence of clear error. *Stewart v. C.I.R.*, 714 F.2d 977, 992 & n. 17 (9th Cir.1983).

■ "The incidence of taxation depends upon the substance of a transaction.... A sale by one person cannot be transformed for tax purposes into a sale by another by using the latter as a conduit through which to pass title." *Commissioner v. Court Holding Co.*, 324 U.S. 331, 334, 65 S.Ct. 707, 708, 89 L.Ed. 981 (1945). We will not treat an entity as a conduit if 1) parties to transactions respect formal distinctions between the entity and others, 2) the entity exists for a valid business purpose, and 3) the transaction in question is incident to the entity's business. *Stewart*, 714 F.2d at 988. Transfers of income within a family warrant special scrutiny. *See Helvering v. Clifford*, 309 U.S. 331, 335, 60 S.Ct. 554, 556, 84 L.Ed. 788 (1940); *Royster v. C.I.R.*, 1985 T.C.M. 258.

■ The record amply supports the Tax Court's characterization of Palomate as a conduit for P.R. Farms' income. Palomate served no real economic function in the storage and marketing of P.R. Farms' fruit. We now review the evidence supporting the Tax Court's characterization of Palomate as a conduit.

Although Palomate was formed for the purpose of storing and packing P.R. Farms' fruit, Palomate owned no packing

or storage facilities. Instead, P.R. Farms built its own $800,000 cold storage facility. Palomate dealt only with P.R. Farms and GFS. P.R. Farms dealt only with Palomate and GFS.

Palomate sold its fruit under the P.R. Farms label. Palomate never used its own "Alta Sierra" label. If, as P.R. Farms asserts, Ricchiuti was unwilling to assume the risks of Palomate's late-season sales strategy, he would not have allowed Palomate to market fruit purchased from P.R. Farms under the P.R. Farms label. Fruit that was damaged by long term cold storage would harm P.R. Farms' reputation if sold under the P.R. Farms label.

Palomate did not pay P.R. Farms for cold storage of fruit sold to Palomate. P.R. Farms claims that the cost of cold storage was included in the price Palomate paid for P.R. Farms' fruit. However, the prices Palomate paid for P.R. Farms' fruit were based on average sales prices published by Federal-State Market News Service. These were prices for fruit delivered immediately, not for fruit kept in cold storage for an indefinite period. In addition, P.R. Farms paid for all repacking of fruit in cold storage, even though Palomate allegedly bore responsibility for repacking necessitated by deterioration during storage.

Although Ricchiuti's son served as president of Palomate, Ricchiuti took an active role in controlling GFS' sales of Palomate fruit. In addition, both Ricchiuti and his son monitored fruit in cold storage and determined when to market each crop.

During the four years in question, Ricchiuti's son received a salary for his services as president of Palomate only once. His compensation for that year was $10,000. In contrast, P.R. Farms regularly paid Ricchiuti's son a substantial salary for managing P.R. Farms' cold storage facility. No other directors, officers or employees of Palomate were compensated.

Ricchiuti investigated customer complaints and determined when fruit was no longer to be sold to certain buyers. The record does not indicate that Ricchiuti's son performed any similar function on behalf of Palomate.

Although Palomate sustained losses on many individual transactions (*see* Reply Brief, Appendix A), gains on numerous oth-er transactions more than offset losses. Palomate never sustained a net loss over any of the years in question. On one occasion, Palomate failed to pay P.R. Farms approximately $100,000 for fruit sold in 1974. Although this mistake may have been inadvertent, it is unlikely that parties conducting business at arm's length would fail to notice and correct an error of such magnitude.

Based on this record, we cannot say that the Tax Court's determination that P.R. Farms bore the ultimate risk of loss on fruit sales was either "illogical or implausible." *See Anderson v. City of Bessemer City,* 470 U.S. 564, 577, 105 S.Ct. 1504, 1513, 84 L.Ed.2d 518 (1985). Accordingly, we hold that the Tax Court did not err in treating Palomate as a conduit.

### C. *Constructive Dividend Treatment of Interest and Palomate Profit*

■ We review the Tax Court's determination that GFS' retention of interest and Palomate's retention of profits constitute constructive dividends to Ricchiuti for clear error. *Akland v. Commissioner,* 767 F.2d 618, 620 (9th Cir.1985). Corporate expenditures constitute constructive dividends only if 1) the expenditures do not give rise to a deduction on behalf of the corporation, and 2) the expenditures create "economic gain, benefit, or income to the owner-taxpayer." *Meridian Wood Products Co. v. United States,* 725 F.2d 1183, 1191 (9th Cir.1984), *citing Palo Alto Town & Country Village Inc., v. Commissioner,* 565 F.2d 1388, 1391 (9th Cir.1977).

■ We have already held that Palomate served no real economic function in storage and marketing of P.R. Farms' fruit. Any benefit conferred upon Palomate by P.R. Farms in connection with fruit sales was gratuitous. Accordingly, P.R. Farms may not deduct profits from fruit sales retained by Palomate as ordinary and necessary business expenses.

■ Palomate's retention of profit from sales of fruit allegedly purchased from P.R. Farms benefited Ricchiuti's children. Transfer of income within the family presumably benefits both transferor and transferee. *See Helvering v. Clifford,* 309 U.S. 331, 335, 60 S.Ct. 554, 556, 84 L.Ed.

788 (1940). The Tax Court's determination that Ricchiuti received constructive dividends in the amount of Palomate's profit on fruit sales was not clearly erroneous.

■ Because P.R. Farms was not legally obligated to allow GFS to retain and invest proceeds from sale of P.R. Farms fruit, P.R. Farms may not deduct interest retained by GFS as an ordinary and necessary business expense.

Allowing GFS to retain interest earned on certificates of deposit purchased with P.R. Farms' income increased GFS' net worth. As 50% shareholder in GFS, Ricchiuti benefited from GFS' retention of interest income. Ricchiuti would not have realized as great a benefit if 1) GFS remitted sales proceeds to P.R. Farms immediately, 2) P.R. Farms invested in certificates of deposit, 3) P.R. Farms paid Ricchiuti dividends equal to the after tax amount of interest earned, and 4) Ricchiuti contributed what remained of the interest to GFS.

■ Our examination of the record convinces us that Ricchiuti had authority to structure transactions in the forgoing manner had he so desired. Had interest earned on certificates of deposit been taxed according to the economic reality, the interest would be taxed twice before it reached GFS—once to P.R. Farms as return on investment and once to Ricchiuti as dividend income. By allowing GFS to retain interest earned on sales proceeds, the interest income was not taxed to either GFS or Ricchiuti during the audit period.[1] P.R. Farms' "expenditure" in allowing GFS to retain interest earned on certificates of deposit inured to Ricchiuti's benefit. The Tax Court's determination that interest retained by GFS constituted a constructive dividend to Ricchiuti was not clearly erroneous.

The judgment of the Tax Court is AFFIRMED.

---

1. GFS had no taxable income during the audit period. Salaries of GFS officers, including Ricchiuti, were adjusted so that GFS realized *no* net income.

According to their tax returns, Ricchiuti and Frances held 90 percent of P.R. Farms' stock, while Ricchiuti held 50% of GFS. P.R. Farms and Ricchiuti contend that allowing GFS to retain interest earned on P.R. Farms' income makes no sense because Ricchiuti had a greater

ownership interest in P.R. Farms than in GFS. But Ricchiuti drew salary as vice president of GFS. In addition, Ricchiuti may have benefited from interest contributions made to GFS by the other 50% shareholder. Given these facts, we cannot assume that Ricchiuti benefited less by allowing GFS to retain interest income than he would have if P.R. Farms invested sales proceeds and paid him dividends.