T.C. Memo. 2017-42

UNITED STATES TAX COURT

LUCZAJ & ASSOCIATES, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

MARTIN J. LUCZAJ AND ALISA M. LUCZAJ, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket Nos. 25541-14, 25542-14.          Filed March 8, 2017.


<u>Walter D. Channels</u>, for petitioners.

<u>Blake J. Corry</u> and <u>Hans Famularo</u>, for respondent.


MEMORANDUM FINDINGS OF FACT AND OPINION

LAUBER, <u>Judge</u>:  With respect to petitioner Luczaj & Associates (L&A),

the Internal Revenue Service (IRS or respondent) determined deficiencies and ac-

curacy-related penalties as follows:

[*2]

| | FYE | Deficiency | Penalty sec. 6662(a) |
|---|---|---|---|
| | Feb. 29, 2012 | $4,772 | $954 |
| | Feb. 28, 2013 | 4,114 | 823 |

With respect to petitioners Martin J. Luczaj and Alisa M. Luczaj, the IRS determined deficiencies and accuracy-related penalties as follows:

| Year | Deficiency | Penalty sec. 6662(a) |
|---|---|---|
| 2011 | $4,768 | $954 |
| 2012 | 7,495 | 1,499 |

After various concessions (discussed in greater detail below), the issues for decision are: (1) whether L&A, a C corporation, is entitled to deduct certain expenses for its fiscal years ending February 29, 2012 (FYE 2012), and February 28, 2013 (FYE 2013), beyond those respondent allowed; (2) whether Mr. and Mrs. Luczaj failed to report, for 2011 and 2012, constructive dividend income from L&A attributable to its payment of their personal expenses; (3) whether Mr. and Mrs. Luczaj are entitled to itemized deductions for 2011 and 2012 beyond those respondent allowed; and (4) whether all petitioners are liable for accuracy-related penalties. With minor exceptions we will sustain respondent's determinations.[1]

_____

[1]All statutory references are to the Internal Revenue Code (Code), in effect for the tax periods at issue, and all Rule references are to the Tax Court Rules of

(continued...)

[*3]                              FINDINGS OF FACT

Some of the facts have been stipulated and are so found.  The stipulation of facts and the attached exhibits are incorporated by this reference.  L&A had its principal place of business in California when it filed its petition.  Mr. and Mrs. Luczaj resided in California when they filed their petition.  Unless otherwise noted, we will use the term "petitioners" to refer to Mr. and Mrs. Luczaj.

During 2011-2013 petitioners owned L&A, a C corporation.  Mr. Luczaj owned 51% of L&A's outstanding stock, and Mrs. Luczaj owned 49%.  Mrs. Luczaj was L&A's sole employee during the tax periods at issue.

L&A engaged in the business of originating home mortgages, acting as an independent contractor for California Mortgage Group (CMG).  L&A's primary role was to solicit clients for CMG.  After L&A referred clients to it, CMG offered those clients mortgage loans to purchase residences.  Mrs. Luczaj's sole responsibility at L&A was client recruitment for CMG.

Mrs. Luczaj had a desk at CMG's main office in Corona, California, where she worked at least two days a week.  She testified that she worked from home the rest of each week and that she typically met clients at home or in a public place.

---

[1](...continued)
Practice and Procedure.  We round all monetary amounts to the nearest dollar.

[*4] During the tax periods at issue petitioners sequentially maintained as their principal residences houses in Yorba Linda and Newport Coast. Mrs. Luczaj conducted most of her client meetings, and did most of her work from home, at the Yorba Linda houses or the Newport Coast house. Petitioners also owned a vacation home in La Quinta, near Palm Desert. They often spent weekends and holidays at the La Quinta house.

During 2011-2012 Mr. Luczaj was employed by the Fullerton Joint Union High School District as a high school adult transition coordinator. In this role he supervised and taught 15 special needs students. As part of his job, he transported students in his own vehicle, a leased Mazda CX-9 van, to movie theaters and bowling alleys and on other outings. He paid for meals, motivational prizes, and classroom supplies for his students, and the school district did not reimburse him for any of these expenses. In 2012 Mr. Luczaj was also employed by the Orange Unified School District as an assistant football coach. In this role he occasionally purchased meals and football equipment for the students he coached, and the school district did not reimburse him for these expenses.

For FYE 2012 and FYE 2013 L&A filed timely Forms 1120, U.S. Corporation Income Tax Return, reporting expenses as follows:

| [*5] Expense | FYE 2012 | FYE 2013 |
|---|---|---|
| Car and truck | $10,941 | $7,139 |
| Insurance | 7,054 | 4,956 |
| Telephone | 5,606 | 5,856 |
| Meals and entertainment | 1,381 | 1,474 |
| Advertising and gifts | 4,203 | 3,107 |
| Medical | -0- | 2,596 |
| Utilities and maintenance | 4,527 | 3,125 |
| Depreciation | 1,910 | 1,910 |
| Dues and subscriptions | 634 | 369 |

For 2011 and 2012 petitioners filed timely Forms 1040, U.S. Individual Income Tax Return, reporting on their Schedules A, Itemized Deductions, the following items:

| Item | 2011 | 2012 |
|---|---|---|
| Charitable contributions | $4,455 | $4,025 |
| Unreimbursed employee expenses | 9,276 | 10,623 |

The IRS selected L&A's and petitioners' returns for examination. The IRS disallowed deductions for most of L&A's reported expenses for lack of substantiation or lack of business purpose and determined accuracy-related penalties. On the basis of its examination of L&A's returns, the IRS determined that petitioners had received (but not reported) constructive dividends attributable to personal expenses that L&A had paid on their behalf. The IRS disallowed for lack of substantiation or lack of business purpose most of the deductions claimed on peti-

[*6] tioners' Schedules A and determined accuracy-related penalties with respect to all of these adjustments.[2]

On July 25, 2014, the IRS timely issued to L&A and petitioners separate notices of deficiency reflecting these adjustments, and they timely petitioned this Court. We consolidated the two cases for purposes of trial, briefing, and opinion.

OPINION

I.    Burden of Proof

The IRS' determinations in a notice of deficiency are generally presumed correct though the taxpayer can rebut this presumption. Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933). Petitioners contend that respondent bears the burden of proof because they have satisfied the requirements of section 7491 for shifting that burden. See Rule 142(a)(1). We reject this contention. Petitioners introduced little if any "credible evidence," see sec. 7491(a)(1), and they did not "maintain[] all records required" by the Code, see sec. 7491(a)(2)(B). They thus bear the burden of proof on all factual issues.

---

[2]The IRS determined that petitioners had also omitted actual dividend income of $226 for 2012 as shown on a Form 1099-DIV, Dividends and Distributions, provided by National Financial Services. Petitioners have conceded this adjustment.

**[\*7]** II.     <u>L&A's Returns</u>

Deductions are a matter of legislative grace.  The taxpayer bears the burden of proving that reported business expenses were actually incurred and were "ordinary and necessary."  Sec. 162(a); Rule 142(a).  Necessary expenses are those that are "appropriate and helpful" to the taxpayer's business, and ordinary expenses are those that are common or frequent in the type of business in which the taxpayer is engaged.  <u>Deputy v. du Pont</u>, 308 U.S. 488, 495 (1940); <u>Welch v. Helvering</u>, 290 U.S. at 113.  Personal, living, or family expenses are not deductible.  Sec. 262.

A taxpayer bears the burden of substantiating the expenses underlying its claimed deductions by keeping and producing records sufficient to enable the IRS to determine the correct tax liability.  Sec. 6001; <u>INDOPCO v. Commissioner</u>, 503 U.S. 79, 84 (1992); sec. 1.6001-1(a), (e), Income Tax Regs.  The failure to keep and present such records counts heavily against a taxpayer's attempted proof.  <u>Rogers v. Commissioner</u>, T.C. Memo. 2014-141, 108 T.C.M. (CCH) 39, 43.

In the event a taxpayer establishes that it has incurred a deductible expense but is unable to substantiate the precise amount, the Court may approximate the amount of the deduction, bearing heavily against the taxpayer whose inexactitude of its own making.  <u>Cohan v. Commissioner</u>, 39 F.2d 540 (2d Cir. 1930).  The Court must, however, have evidence sufficient to provide a basis upon which an

[*8] estimate can be made. Norgaard v. Commissioner, 939 F.2d 874, 879 (9th Cir. 1991), aff'g in part, rev'g in part T.C. Memo. 1989-390; Vanicek v. Commissioner, 85 T.C. 731, 742-743 (1985).

Section 274(d) imposes stricter substantiation requirements for deductions claimed for travel and meals and entertainment expenses. No such deduction is allowed unless the taxpayer substantiates, by adequate records or by sufficient evidence corroborating his own statements, the amount, time and place, and business purpose for each expenditure. Sec. 274(d); sec. 1.274-5T(a), (b), and (c), Temporary Income Tax Regs., 50 Fed. Reg. 46014-46017 (Nov. 6, 1985). A court may not apply the Cohan rule to estimate expenses covered by section 274(d). Sanford v. Commissioner, 50 T.C. 823, 827-828 (1968), aff'd per curiam, 412 F.2d 201 (2d Cir. 1969).

The records that Mrs. Luczaj kept for L&A's business were incomplete and often contradictory. The IRS allowed portions of some claimed deductions during the examination, and respondent conceded others at trial or in his post-trial brief. Respondent contends that the balance of the deductions were properly disallowed because the expenses, to the extent substantiated, were not "ordinary and necessary" expenses of L&A's mortgage origination business. See sec. 162(a). As explained more fully below, we agree with respondent.

**[*9]** A.    Car and Truck Expenses

L&A reported on its Forms 1120, under the caption "Other Amounts," car and truck expenses of $10,941 and $7,139 for FYE 2012 and 2013, respectively. These alleged expenses were incurred in connection with two vehicles:  a Mercedes SL 500 and a Toyota Avalon.  Petitioners individually owned both vehicles.

Passenger automobiles are included in the section 280F(d)(4) definition of "listed property," and automobile expenses are thus subject to the heightened substantiation requirements of section 274(d).  Sec. 280F(d)(4)(A)(i); see Fernandez v. Commissioner, T.C. Memo. 2011-216.  To satisfy the requirements of section 274(d), the taxpayer must keep a contemporaneous mileage log or have other credible evidence with a "high degree of probative value to elevate such * * * evidence to the level of credibility reflected by a record made at or near the time of the expenditure or use."  Sec. 1.274-5T(c), Temporary Income Tax Regs., supra.  The taxpayer bears the burden of proving that a passenger automobile was used for business rather than personal reasons.  See Michaels v. Commissioner, 53 T.C. 269, 275 (1969).

Mrs. Luczaj allegedly used the Mercedes and the Toyota to visit clients and pick up supplies, and petitioners documented expenses for tolls, fuel, registration fees, and vehicle repairs.  But L&A deducted 100% of the costs attributable to

[*10] these two cars, and petitioners failed to substantiate the extent to which the vehicles were actually used for L&A's business. Mrs. Luczaj was L&A's only employee; when she was using one car, the other was available for use by her husband for any purpose. Petitioners regularly used one or both cars to drive to their La Quinta vacation home, which plainly was not a business use. And Mrs. Luczaj used both cars to commute between petitioners' residences and CMG's main office, which we find (absent credible evidence to the contrary) to have been L&A's principal place of business. The costs of commuting between one's residence and one's workplace are nondeductible. See sec. 1.162-2(e), Income Tax Regs.

Petitioners testified that they had created for both vehicles contemporaneous mileage logs that were destroyed during one of their moves. We did not find this testimony credible: Petitioners' last move occurred in May 2012, and the mileage log for the balance of 2012 could not have been lost in that move. At trial petitioners produced credit card statements which they had annotated to distinguish between alleged "corporate" and "personal" expenses. These statements with check marks and notations lack the specificity necessary to establish the business purpose for each expenditure as required by section 274(d). See sec. 1.274-5T(c), Temporary Income Tax Regs., supra.

**[\*11]** L&A likely incurred some vehicle costs during the tax periods at issue. But petitioners produced no credible evidence to substantiate the extent to which the vehicles, which petitioners individually owned, were used for business rather than personal purposes. Mrs. Luczaj's self-serving testimony is insufficient by itself to establish the extent of business use. See Tokarski v. Commissioner, 87 T.C. 74, 77 (1986). Because car and truck expenses are subject to the strict substantiation requirements of section 274(d), we are not at liberty to estimate these expenses. We thus have no alternative but to deny for lack of substantiation L&A's claimed deductions for car and truck expenses of $10,941 and $7,319 for FYE 2012 and 2013, respectively.

B.     Insurance Expenses

L&A reported insurance expenses of $7,054 and $4,956 for FYE 2012 and 2013, respectively. At trial respondent conceded deductions for health insurance expenses of $4,409 and $3,013, respectively. The balance of the claimed deductions were for automobile and personal property insurance. Because petitioners failed to prove the extent to which the cars were used for business purposes, L&A cannot deduct any automobile insurance cost. Petitioners provided a State Farm billing statement listing a personal property policy, but they produced no evidence to establish what property this policy covered or that the covered property had a

[*12] business use. We will accordingly uphold respondent's disallowance of the balance of L&A's deductions for insurance costs ($2,645 for FYE 2012 and $1,943 for FYE 2013).

### C. Telephone Expenses

L&A reported telephone expenses of $5,606 and $5,856 for FYE 2012 and 2013, respectively. Respondent in his post-trial brief conceded deductions for the cost of a toll-free number ($831 and $725 for FYE 2012 and FYE 2013, respectively). The balance of the claimed deductions were attributable to Internet service and five phone lines: a landline for the La Quinta house, a landline for the Yorba Linda house, Mrs. Luczaj's cell phone, Mr. Luczaj's cell phone, and his mother's cell phone.

We agree with respondent that L&A may not deduct the balance of the claimed telephone expenses. Costs attributable to the landlines are automatically treated as personal expenses. See sec. 262(b) (treating charges for the first telephone line to the taxpayer's residence as a personal expense). Petitioners provided no evidence of the extent (if any) to which they used the Internet in the conduct of L&A's mortgage origination business. Because petitioners provided no evidence that Mr. Luczaj performed meaningful services for L&A or that his mother worked for L&A, it may not deduct the cost of their cell phone service. Mrs. Luczaj esti-

**[\*13]** mated that 80% of her cell phone use was business related. But she supplied no documentary evidence to support this estimate; since L&A had a separate toll-free number that many clients presumably used, we did not find her testimony plausible. We accordingly find that L&A is not entitled to deduct any telephone expenses beyond those respondent has conceded.

D.    Meals and Entertainment Expenses

L&A reported meals and entertainment expenses of $1,381 and $1,474 for FYE 2012 and 2013, respectively. These expenses were attributable to various meals that petitioners consumed and an overnight hotel stay. Petitioners established that the expenses at issue were incurred, but they provided no evidence, apart from testimony that we did not find credible, that these expenses had a business purpose. Business meals, entertainment, and related travel expenses are subject to the heightened scrutiny requirements of section 274(d). See sec. 274(d); sec. 1.274-5T(a), (b), and (c), Temporary Income Tax Regs., supra. We conclude that petitioners have not carried their burden of proving the deductibility of these items.

**[*14]** E. <u>Advertising and Gifts</u>

  L&A reported, for FYE 2012 and 2013 respectively, expenses of $4,203 and $3,107 allegedly incurred for marketing, promotional fees, and gifts to clients. Before trial respondent conceded $1,155 of these expenses for FYE 2012 and $760 for FYE 2013. We agree with respondent that L&A may not deduct the balance of the expenses.

  Mrs. Luczaj admitted at trial that most of the supposed "marketing" and "promotional" expenses were actually incurred for repairs to their residences and maintenance of their swimming pool. Other "promotional fees" consisted of purchases from Costco, Target, Staples, and Rite Aid for items including cocktail napkins for a birthday party. Petitioners have failed to establish that any of these costs was business related.

  L&A reported as "gifts" numerous purchases from Costco, Target, and Trader Joe's, including spa gift cards. Most of these items cost more than $25. Section 274(b)(1) provides that no deduction is allowed for the cost of a gift to an individual to the extent that this cost, when combined with expenses for gifts to the same individual during the taxable year, exceeds $25. To substantiate a business gift, a taxpayer must prove with contemporaneous records or other credible evidence the price, date, description, and business purpose of the gift, in addition

[*15] to the donor's relationship to the donee. Sec. 274(d); sec. 1.274-5T(b)(5), Temporary Income Tax Regs., supra. Petitioners maintained no records to identify the recipients of the supposed gifts or the status of those persons as L&A clients. We conclude that L&A is not entitled to deduct any gift expenses.

F. Medical Expenses

L&A did not report any medical expenses on its FYE 2012 return, but respondent conceded before trial that L&A is entitled to a deduction of $4,480 for such costs. L&A reported medical expenses of $2,596 on its FYE 2013 return, and respondent before trial conceded this deduction in full. We accordingly conclude that L&A is entitled to deduct medical expenses of $4,480 for FYE 2012 and $2,596 for FYE 2013.

G. Utilities and Maintenance

L&A reported, for FYE 2012 and FYE 2013 respectively, expenses of $4,527 and $3,125 attributable to maintenance of and repairs to petitioners' residences and utilities expenses for these houses. Petitioners seek to support these deductions as "home office" expenses. See sec. 280A(c) (allowing deduction if a taxpayer uses a home office as his "principal place of business" or a "place of business which is used by * * * clients, or customers in meeting or dealing with the taxpayer"). Respondent replies that L&A cannot deduct these costs as "home

[*16] office expenses" because a C corporation cannot have a "home office."  See Staff of J. Comm. on Taxation, General Explanation of the Tax Reform Act of 1976, at 139 (J. Comm. Print 1976) ("[T]he provisions of * * * [section 280A] apply to individuals, trusts, estates, partnerships, and electing small business corporations.  This provision does not apply to a corporation (other than an electing small business corporation).").  Respondent acknowledges, however, that section 162 in appropriate circumstances may provide a basis for a corporation's claiming deductions of this sort.  See G.D. Parker, Inc. v. Commissioner, T.C. Memo. 2012-327, 104 T.C.M. (CCH) 627, 641 & n.12.

We need not address these threshold questions because petitioners have not substantiated the extent (if any) to which their personal residences were actually used for the conduct of L&A's business.  If a portion of a residence is devoted exclusively and on a regular basis to a business purpose, determining the costs properly allocable to that space presents a question of fact.  See Feldman v. Commissioner, 84 T.C. 1, 8 (1985), aff'd, 791 F.2d 781 (9th Cir. 1986).  In making that determination, we ordinarily consider the number of rooms or square footage devoted exclusively to the business purpose as compared to the total number of rooms or total square footage.  See id.; Rodriguez v. Commissioner, T.C. Memo. 2009-22; Swain v. Commissioner, T.C. Memo. 1996-22, aff'd without published

[*17] opinion, 96 F.3d 1439 (4th Cir. 1996). Depending on the facts, other methods of allocating costs may also be reasonable. See Feldman, 84 T.C. at 8.

Mrs. Luczaj testified that she worked from home up to three days a week and met clients there. Most of these client meetings occurred, and most of her work from home was performed, at one of the Yorba Linda houses or at the Newport Coast house, which were petitioners' principal residences. But petitioners provided no information about the configuration or square footage of these homes or any other data that would enable us to determine how much space could properly be allocated to L&A's business. Petitioners did supply a floor plan and square footage information for their La Quinta vacation home. But they offered no credible evidence that Mrs. Luczaj engaged in meaningful business activity there or that any portion of their vacation home was used regularly and exclusively for the conduct of L&A's business.

In sum, petitioners have failed to carry their burden of proving that any of the maintenance, repair, or utilities costs attributable to their personal residences constituted "ordinary and necessary" expenses of L&A's business. We thus agree with respondent that the claimed deductions must be denied in their entirety.

[*18]  H.    Depreciation

L&A claimed for each period at issue a depreciation deduction of $1,910. About 90% of this depreciation was claimed for the Mercedes; because petitioners did not prove the extent to which that car was used for L&A's business, L&A is not entitled to claim depreciation for it.  The balance of the depreciation was claimed for unspecified "leasehold improvements" and for items such as computers and telephones.  Petitioners did not prove the extent to which those items, if not previously expensed, were actually used to conduct L&A's business.  We thus agree with respondent that the claimed deductions must be denied in their entirety.

I.    Dues and Subscriptions

L&A reported for FYE 2012 dues and subscriptions expenses of $634.  Respondent before trial conceded $277 of these expenses, and petitioners in their post-trial brief conceded the $357 balance.  L&A reported for FYE 2013 dues and subscriptions expenses of $369 and petitioners in their post-trial brief conceded $260 of this sum.  Mrs. Luczaj testified vaguely that the $109 balance was paid for "business promotions" and "publications."  We are not required to accept her unsubstantiated testimony, see Tokarski, 87 T.C. at 77, and we will disallow the balance of the claimed deductions.

[*19] III.    Petitioners' Returns

We now turn to petitioners' joint Federal income tax returns for 2011 and 2012.  For each year the issues for decision are:  (1) whether petitioners received constructive dividend income from L&A by virtue of its payment of their personal expenses; (2) whether they are entitled to the charitable contribution deductions claimed on their returns; and (3) whether they are entitled to deductions for unreimbursed employee expenses.  We address these issues in turn.

A.    Constructive Dividends

Respondent contends that petitioners during 2011 and 2012 received from L&A unreported constructive dividends in amounts equal to the sum of L&A's disallowed expense deductions.  In the notice of deficiency respondent determined constructive dividends of $34,824 and $29,998, respectively.  Before trial respondent made concessions reducing these figures to $22,848 and $27,603, respectively, chiefly to reflect timing differences stemming from L&A's use of fiscal year accounting.  In his post-trial brief respondent conceded additional L&A deductions, reducing the alleged constructive dividends to $22,017 and $26,955, respectively.  We sustain respondent's determination of constructive dividends in the latter revised amounts.

[*20] The determination of constructive dividend income received by petitioners is a determination of unreported income. See Coastal Heart Med. Grp., Inc. v. Commissioner, T.C. Memo. 2015-84, 109 T.C.M. (CCH) 1424, 1429. The Court of Appeals for the Ninth Circuit, the appellate venue for these cases absent stipulation to the contrary, has held that for the presumption of correctness to attach to the notice of deficiency, the IRS must provide some reasonable foundation connecting the taxpayer with the income-producing activity. See Weimerskirch v. Commissioner, 596 F.2d 358, 360 (9th Cir. 1979), rev'g 67 T.C. 672 (1977). Once the IRS has produced evidence linking the taxpayer to an income-producing activity, the burden of proof shifts to the taxpayer to prove by a preponderance of the evidence that the IRS' determinations are arbitrary or capricious. Helvering v. Taylor, 293 U.S. 507, 515 (1935); Tokarski, 87 T.C. at 76-77. We find that respondent has sufficiently established an evidentiary foundation to shift the burden to petitioners on this issue.

Except as otherwise provided in the Code, "gross income means all income from whatever source derived." Sec. 61(a). The definition of gross income broadly includes any instance of undeniable accession to wealth, clearly realized, and over which the taxpayer has complete dominion and control. Commissioner v. Glenshaw Glass Co., 348 U.S. 426, 431 (1955).

**[*21]** Sections 301 and 316 govern the characterization for Federal income tax purposes of corporate distributions of property to shareholders. If the distributing corporation has sufficient earnings and profits (E&P), the distribution is a dividend that the shareholder must include in gross income. Sec. 301(c)(1). If the distribution exceeds the corporation's E&P, the excess represents a nontaxable return of capital or capital gain. Sec. 301(c)(1), (2), and (3). The taxpayer bears the burden of proving that the corporation lacks sufficient E&P to support dividend treatment at the shareholder level. Truesdell v. Commissioner, 89 T.C. 1280, 1295-1296 (1987); Fazzio v. Commissioner, T.C. Memo. 1991-130, aff'd, 959 F.2d 630 (6th Cir. 1992); Zalewski v. Commissioner, T.C. Memo. 1988-340; Delgado v. Commissioner, T.C. Memo. 1988-66. If neither party presents evidence as to the distributing corporation's E&P, the taxpayer has not met his burden of proof. Truesdell, 89 T.C. at 1295-1296; Vlach v. Commissioner, T.C. Memo. 2013-116.

Dividends may be formally declared or constructive. A constructive dividend is an economic benefit conferred upon a shareholder by a corporation without an expectation of repayment. Truesdell, 89 T.C. at 1295 (citing Noble v. Commissioner, 368 F.2d 439, 442 (9th Cir. 1966), aff'g T.C. Memo. 1965-84). "Corporate expenditures constitute constructive dividends only if (1) the expenditures

[*22] do not give rise to a deduction on behalf of the corporation, and (2) the expenditures create 'economic gain, benefit, or income to the owner-taxpayer.'" P.R. Farms, Inc. v. Commissioner, 820 F.2d 1084, 1088 (9th. Cir. 1987) (quoting Meridian Wood Prods. Co. v. United States, 725 F.2d 1183, 1191 (9th Cir. 1984)), aff'g T.C. Memo. 1984-549).

Corporate payments to third parties may constitute constructive dividends if they are made on behalf of a shareholder or for his economic benefit. United States v. Mews, 923 F.2d 67, 68 (7th Cir. 1991); see, e.g., Grossman v. Commissioner, 182 F.3d 275 (4th Cir. 1999) (corporate payments for repairs and painting of shareholder's residence), aff'g T.C. Memo. 1996-452; Noble, 368 F.2d at 441 (corporate payment of shareholder's travel expenses). The amount of the constructive dividend equals the fair market value of the benefit received. Challenge Mfg. Co. v. Commissioner, 37 T.C. 650, 663 (1962); Schank v. Commissioner, T.C. Memo. 2015-235, 110 T.C.M. (CCH) 542, 548. Whether corporate expenditures are disguised dividends presents a question of fact. DKD Enters. v. Commissioner, 685 F.3d 730, 735 (8th Cir. 2012), aff'g in part, rev'g in part, T.C. Memo. 2011-29; Schank, 110 T.C.M. (CCH) at 548.

Neither party presented any evidence regarding L&A's current or accumulated E&P. Petitioners therefore have failed to carry their burden of proving that

[*23] L&A had insufficient E&P to justify dividend treatment.  In disallowing the deductions L&A claimed in excess of those respondent conceded, we have determined that none of these expenditures "give[s] rise to a deduction on behalf of the corporation."  P.R. Farms, Inc., 820 F.2d at 1088.  Thus, the only question is whether L&A's expenditures "create[d] 'economic gain, benefit, or income to the owner-taxpayer.'"  Ibid.

During 2011 and 2012 petitioners together owned 100% of L&A's stock.  The L&A expenditures for which deductions have been disallowed included payments made for repairs to petitioners' personal residences, utilities expenses, swimming pool maintenance, personal insurance policies, automobiles, telephones, health club dues, and restaurant meals.  L&A's supposed "marketing" and "promotional" payments were for items purchased from Costco, Target, Staples, Rite Aid, Trader Joe's, and other stores where consumers commonly buy personal items.  Petitioners have not identified any category of challenged corporate expenditures that did not benefit one or both of them personally.

Petitioners' principal argument is that they cannot be taxed on any corporate distributions because L&A neither declared nor paid any dividends in 2011 or 2012.  This argument ignores the well-established principle that "[d]ividends may be formally declared or they may be constructive."  Noble, 368 F.2d at 442.  We

[*24] have determined that none of the challenged expenditures advanced L&A's corporate purposes, and petitioners have not borne their burden of proving that particular expenditures did not benefit them personally. We accordingly sustain respondent's revised determination that petitioners received from L&A during 2011 and 2012 constructive dividends of $22,017 and $26,955, respectively.[3]

B.     Charitable Contributions

Section 170(a)(1) allows a deduction for any charitable contribution made within the taxable year. If the taxpayer makes a charitable contribution of property other than money, the amount of the contribution is generally equal to the fair market value of the property at the time the gift is made. See sec. 1.170A-1(c)(1), Income Tax Regs. For all charitable contributions, the taxpayer must maintain bank records, a receipt or letter from the recipient charity, or other reliable written records showing the name of the donee and the date and amount of the gift. Sec. 170(f)(17); sec. 1.170A-13(a)(1), Income Tax Regs. For all contributions of $250 or more, the taxpayer must obtain a "contemporaneous written acknowledgment" (CWA) from the donee. See sec. 170(f)(8)(A). If a charity provides goods and

---

[3]Respondent appears to concede in his post-trial brief that the constructive dividends constitute "qualified dividends" within the meaning of section 1(h)(11). See Schank, 110 T.C.M. (CCH) at 547 n.12. The parties have not briefed this issue and, if any questions remain to be resolved concerning it, the parties may address those questions in their Rule 155 computations.

[*25] services to a donor in exchange for a contribution, the gift is pro tanto non-deductible. Sec. 1.170A-1(h), Income Tax Regs.

For 2011 petitioners claimed a charitable contribution deduction of $4,455, of which respondent conceded $595 before or at trial. For 2012 petitioners claimed a charitable contribution deduction of $4,025, of which respondent conceded $230 at trial or on brief. The amounts remaining in dispute are thus $3,860 and $3,795, respectively.

For 2011 petitioners allegedly made donations of cash and food to various charities. Mrs. Luczaj testified that the documents substantiating these donations were lost during a household move. Petitioners could not identify the charities to which they made the alleged gifts, and they provided no form of substantiation as required by the regulations. We find that they are entitled to no deduction for 2011 beyond what respondent has conceded.

For 2012 petitioners allegedly made donations of cash and food to various charities and donations via credit card at the checkout of a Von's grocery store. Respondent in his post-trial brief conceded that petitioners contributed $135 upon checkout at Von's; after reviewing petitioners' credit card statements, we find that they are entitled to no greater deduction. Petitioners also substantiated a $50 payment to Breast Cancer Angels; because petitioners did not prove that this payment

[*26] exceeded the value of a lunch they received in exchange, respondent proper-ly disallowed a deduction for this amount. See sec. 1.170A-1(h), Income Tax Regs. Petitioners submitted no substantiation for any other gifts in 2012, and we find that they are entitled to no charitable contribution deduction beyond that conceded by respondent.

C.     Unreimbursed Employee Expenses

All of the unreimbursed employee expenses that petitioners claimed as de-ductions were attributable to Mr. Luczaj's teaching and coaching activities. For each year respondent has conceded a deduction of $1,131 for dues paid to the California Teachers Association. The amounts remaining in dispute for 2011 and 2012 are $8,145 and $9,492, respectively.

Taxpayers may deduct ordinary and necessary expenses paid in connection with operating a trade or business. Sec. 162(a); Boyd v. Commissioner, 122 T.C. 305, 313 (2004). The term "trade or business" includes performing services as an employee. Primuth v. Commissioner, 54 T.C. 374, 377-378 (1970). However, an employee expense is not ordinary and necessary if the employee is entitled to re-imbursement from his employer. See Podems v. Commissioner, 24 T.C. 21, 22-23 (1955); Noz v. Commissioner, T.C. Memo. 2012-272.

[*27]  Petitioners claimed a large variety of items as unreimbursed expenses of Mr. Luczaj's teaching and coaching businesses.  Some items (such as meals allegedly purchased for students) are subject to the heightened substantiation requirements of section 274(d).  After carefully reviewing the evidence, we conclude that the claimed deductions for meals, telephone expenses, alleged seminar expenses, computer software, DVDs, and "teacher commissions" have not been adequately substantiated or have not been shown to be business related.  We will briefly address the remaining items.

  • Petitioners reported expenses for "classroom supplies" of $1,279 and $923 for 2011 and 2012, respectively.  They provided no substantiation for any of the 2011 expenses.  For 2012 they provided credit card statements substantiating that Mr. Luczaj purchased $540 of football equipment for the students he coached.  We find that these were ordinary and necessary expenses of his coaching business because the students, whose families were economically challenged, needed this equipment to hold their practice sessions.  We find credible his testimony that he did not qualify for reimbursement by his employer.  We will therefore allow a deduction of $540 for 2012.[4]

---

[4]An above-the-line deduction under section 62(a)(2)(D) is not available because any football equipment would have been used outside the classroom.

[*28]  • Petitioners reported "student motivation" expenses of $2,012 and $1,605 for 2011 and 2012, respectively.  A teacher's unreimbursed expenses to incentivize student learning are not deductible unless the school requires the employee to incur such expenses.  See Farias v. Commissioner, T.C. Memo. 2011-248 (holding that a teacher who bought candy and audio players for the classroom to motivate students could not deduct these expenses when the school did not require her to purchase them).  Petitioners provided no substantiation for any of the 2011 expenses.  For 2012 they provided credit card statements showing payments to a photography store with the notation "student motivation."  But they did not establish any nexus between these expenses and Mr. Luczaj's teaching duties.  See Patterson v. Commissioner, T.C. Memo. 1971-234, 30 T.C.M. (CCH) 1003, 1007 (holding that teacher's purchase of transistor radios and books for students did not give rise to deductible expense).

 • Petitioners reported automobile expenses of $1,295 and $3,388 for 2011 and 2012 respectively, allegedly attributable to costs of transporting students to various outings in the Mazda van.  Travel expenses are subject to the heightened substantiation requirements of section 274(d).  Petitioners did not provide a mileage log or other sufficient documentation to substantiate these expenses.  Instead, they urged that we allow as a deduction 100% of the van's lease cost on the theory

[*29] that Mr. Luczaj used it (because of its large capacity) chiefly for transporting students. But he testified that he also used the van to commute to his teaching and coaching jobs, and commuting expenses are nondeductible. See supra p. 10. In the absence of a mileage log or other persuasive evidence, we are not at liberty to estimate what portion of the Mazda vehicle expense might qualify for deduction.

       • Petitioners reported $1,800 of "union and professional dues" for each year. As noted earlier, respondent has conceded deductions of $1,131 for union dues. See supra p. 26. The $669 remaining in dispute for each year chiefly represents premiums paid for supplemental health insurance, which could be deductible (if at all) only as medical expenses under section 213. During the tax periods at issue health insurance premiums paid by an employee were deductible only to the extent they exceeded 7.5% of adjusted gross income (AGI). See sec. 213(a).[5] Petitioners' AGI for 2011 and 2012 far exceeds $8,920 ($669 ÷ .075). We will therefore disallow the claimed deduction for "union and professional dues" except to the extent conceded by respondent.

--------

[5]Section 213(a) was subsequently amended to raise the deductibility threshold to 10% of AGI effective for tax years beginning after December 31, 2012. Patient Protection and Affordable Care Act, Pub. L. No. 111-148, sec. 9013(a), 124 Stat. at 868.

**[*30]** IV.    Penalties

The Code imposes a 20% penalty on the portion of any underpayment of tax attributable to "[n]egligence or disregard of rules and regulations" or "[a]ny substantial understatement of income tax."  Sec. 6662(a) and (b)(1) and (2).  Negligence includes "any failure to make a reasonable attempt to comply" with the internal revenue laws.  Sec. 6662(c).  An understatement of income tax is "substantial" if it exceeds the greater of $5,000 or 10% of the tax required to be shown on the return.  Sec. 6662(d)(1)(A).  Under section 7491(c) respondent bears the burden of production with respect to the liability for any penalty.  See Higbee v. Commissioner, 116 T.C. 438, 446 (2001).

No penalty is imposed with respect to any portion of an underpayment if the taxpayer acted with reasonable cause and in good faith with respect thereto.  The taxpayer bears the burden of proving reasonable cause and good faith.  Id. at 444-447.  Reasonable cause can be shown by good-faith reliance on the advice of a qualified tax professional.  Sec. 1.6664-4(b)(1), (c), Income Tax Regs.

Respondent has met his burden of production with respect to negligence for L&A and petitioners.  They presented virtually no credible evidence that L&A's expenditures had a business purpose.  It claimed deductions for hundreds of expenses that were obviously personal to petitioners, including repairs to their resi-

[*31] dences, swimming pool maintenance, household utilities expenses, personal insurance policies, automobile expenses, telephone expenses, health club dues, and restaurant meals.

Petitioners have failed to establish that they made a good-faith effort to determine their Federal income tax liabilities correctly. Although they hired a tax return preparer for L&A's returns and their individual returns, they do not contend that they relied in good faith on the tax return preparer's advice. We accordingly conclude that the entirety of the underpayments by L&A and petitioners is attributable to negligence. Alternatively, in the event the Rule 155 computations show that the various understatements of income tax exceed the greater of $5,000 or 10% of the amounts required to be shown on the respective returns, we conclude that those underpayments are attributable to substantial understatements of income tax for which reasonable cause has not been shown.

To reflect the foregoing,

<u>Decisions will be entered</u>

<u>under Rule 155</u>.