T.C. Memo. 2019-148

UNITED STATES TAX COURT

MOACIR SANTOS, Petitioner v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 11847-15.                    Filed October 31, 2019.

Moacir Santos, for himself.

David M. Carl and Trent D. Usitalo, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

GUSTAFSON, Judge:  Petitioner Moacir Santos operated an engineering

and paving company through his wholly owned C corporation, Santos Engineering

Santos Pavers, Inc. ("SESP").  Throughout 2010 Mr. Santos used SESP's bank

account to make cash withdrawals, electronic transfers to his personal bank

account, and payments of his personal expenses.  Mr. Santos did not file his 2010

[*2] Federal income tax return. Pursuant to section 6212(a)[1] the Internal Revenue Service ("IRS") issued to Mr. Santos a statutory notice of deficiency ("SNOD") on January 30, 2015, which determined the following deficiencies in his Federal income tax and additions to tax for tax years 2010, 2011, and 2012:

| | | Additions to tax | | |
|---|---|---|---|---|
| Year | Deficiency | Sec. 6651(a)(1) | Sec. 6651(a)(2) | Sec. 6654 |
| 2010 | $166,635 | $37,493 | $38,326 | $3,574 |
| 2011 | 70,701 | 15,908 | 12,019 | 1,400 |
| 2012 | 3,740 | 842 | 411 | --- |

Mr. Santos filed a timely petition under section 6213(a) for redetermination of the deficiencies and additions to tax. After concessions by the parties,[2] the issues for decision are:

---

[1]Unless otherwise indicated, all section references are to the Internal Revenue Code ("26 U.S.C."; "the Code") in effect for the relevant times, and all Rule references are to the Tax Court Rules of Practice and Procedure. All dollar amounts are rounded to the nearest dollar.

[2]In "Respondent's Seriatim Opening Brief" the Commissioner conceded "the determinations in the notice of deficiency * * * for the taxable year 2012 and * * * the additions to tax under [sections] 6651(a)(1), 6651(a)(2), and 6654 for such year" and the addition to tax under section 6654(a) for the 2010 tax year. Then in "Respondent's Supplement to Seriatim Answering Brief" the Commissioner conceded the deficiency and additions to tax for the 2011 tax year.

**[*3]**  (1)  whether Mr. Santos had constructive dividend income of $156,469 in 2010 as a result of cash withdrawals, electronic transfers to his personal account, and payments of personal and meal expenses, from SESP's bank account (we hold that he did);

(2)  whether Mr. Santos's filing status was unmarried, married filing separately, or married filing jointly for the 2010 tax year (we hold that his filing status was unmarried);

(3)  whether Mr. Santos is liable for the addition to tax under section 6651(a)(1) for failure to timely file for the 2010 tax year (we hold that he is); and

(4)  whether Mr. Santos is liable for the addition to tax under section 6651(a)(2) for failure to timely pay for the 2010 tax year (we hold that he is).

## FINDINGS OF FACT

At the time Mr. Santos filed his petition, he resided in California.

<u>Mr. Santos</u>

Mr. Santos is the owner and operator of SESP, which he started after a broken shoulder ended his career as a professional bull rider.  In October 2010 Mr. Santos's son was born, and he married his son's mother in 2011.  Throughout 2010 Mr. Santos maintained a Wells Fargo business checking account in his name

[*4] and another Wells Fargo business checking account in the name of SESP. Mr. Santos purchased a house in March 2011.

Mr. Santos never filed his Federal tax returns for the 2010, 2011, and 2012 tax years.

SESP

In 2007 Mr. Santos incorporated SESP in the State of California as Santos Construction, Inc. During the entire 2010 tax year, Mr. Santos was its sole shareholder. At some point California's Franchise Tax Board suspended SESP's corporate status for failure to meet tax requirements.

SESP had gross receipts for the taxable year 2010 in the amount of $443,028. This amount represents the aggregate amount of deposits into Mr. Santos's personal and corporate bank accounts. SESP did not keep books and records, so there was no way to distinguish between Mr. Santos's personal finances and the corporation's.

In 2010 Mr. Santos expended SESP funds for his own use. He made cash withdrawals from SESP's bank account totaling $113,846 for his own use and not for corporate expenses. Also for Mr. Santos's personal use, SESP transferred $560 from its corporate account to his personal bank account. In 2010 Mr. Santos paid the cost of meals for himself totaling $13,146 by using SESP's corporate

[*5] debit card.  SESP paid $28,917 worth of Mr. Santos's other personal expenses in 2010 (including:  rent, travel, and childcare).  The amounts SESP expended for Mr. Santos personally totaled as follows:

| | |
|---|---|
| Cash withdrawals | $113,846 |
| Electronic transfer | 560 |
| Meals | 13,146 |
| Other personal expenses | 28,917 |
| Total | 156,469 |

(The "Meals" amount given above reflects adjustments that correct for meal expenses that the Commissioner had initially categorized instead as undifferentiated "personal expenses".)

SESP's earnings and profits were at least $165,445 in 2010.

Notice of deficiency

The IRS computed Mr. Santos's income for 2010 by reference to bank deposits and cash payments, plus personal and other nondeductible expenditures. On the basis of the results of that analysis, the IRS prepared for Mr. Santos a substitute for return for the year 2010 (pursuant to section 6020(b)) and issued to him the SNOD dated January 30, 2015.  That SNOD determined, among other things, that Mr. Santos received unreported business income of $487,344 in 2010, which resulted in a deficiency of $166,635, and that he was liable for additions to

[*6] tax under sections 6651(a)(1) and (2) and 6654 for the 2010 tax year.

Mr. Santos timely mailed his petition to this Court on April 30, 2015.

Tax Court proceedings

Mr. Santos's timely filed petition does not contest the amount of unreported gross income stated in the SNOD but argues that he is entitled to additional deductions therefrom and that his filing status was "married filing jointly". This case was first set for trial in April 2016 but was continued generally. The case was then set for trial in September 2016, but Mr. Santos did not provide to the Commissioner the documents he intended to offer into evidence until two business days before his trial date; and on the day of trial, he asked for another continuance, which the Court granted.

Trial was recalendared for March 2017, and in the interim Mr. Santos had an accountant prepare his tax returns. He submitted to the Commissioner copies of Forms 1040, "U.S. Individual Income Tax Return", for the 2010, 2011, and 2012 tax years that were dated October 18, 2016, but neither he nor anyone purporting to be his agent signed them. Each of Mr. Santos's Forms 1040 included a Schedule C, "Profit or Loss From Business", reporting SESP's income.

**[*7]** <u>SESP's gross receipts and constructive distributions</u>

At the beginning of trial on March 28, 2017, almost two years after first filing his petition, Mr. Santos moved to amend his petition to treat the gross receipts as attributable to SESP rather than to himself personally. The Court granted Mr. Santos's unopposed motion. The parties stipulated that the amount of gross receipts SESP received in 2010 was $443,028. Mr. Santos also provided to the Commissioner a statement titled "SESP Profit and Loss Detail" for 2010, which provided line item entries for income and expenses and stated that SESP's net income was $121,381.

As for Ms. Santos's 2010 income, the Commissioner then proceeded under the theory that in 2010 Mr. Santos had received constructive dividends from SESP. The Commissioner posits that during 2010 Mr. Santos "drew no distinction between the funds of his business and his personal funds". The Commissioner identified various categories of expenditures in SESP's bank statements that he argues were distributions to Mr. Santos--cash withdrawals, electronic transfers, personal expenses, and meal expenses--and at trial he put on evidence of those expenditures.

**[\*8]** <u>Character of the distributions received by Mr. Santos</u>

To determine the character of the constructive distributions, the Commissioner calculated SESP's earnings and profits for 2010. The Commissioner posits that after adjustments to SESP's financial statement and Mr. Santos's Schedule C for stipulated amounts, disallowed deductions, and statutorily required adjustments are made, SESP's earnings and profits were at least $165,445 in 2010. Therefore, he argues that all of the constructive distributions Mr. Santos received from SESP in 2010 are dividends.

## OPINION

I.    <u>Burden of proof</u>

A.    <u>The taxpayer's burden under the general rule</u>

In general the IRS's SNOD is presumed correct, and (with exceptions we discuss below) the taxpayer has the burden of proving it to be wrong. <u>Welch v. Helvering</u>, 290 U.S. 111, 115 (1933); <u>see also</u> Rule 142(a); <u>INDOPCO, Inc. v. Commissioner</u>, 503 U.S. 79, 84 (1992).

Section 6001 requires that "[e]very person liable for any tax imposed by this title, or for the collection thereof, shall keep such records, render such statements, make such returns, and comply with such rules and regulations as the Secretary may from time to time prescribe." Taxpayers are thus required to keep records and

**[*9]** maintain them as long as they may become material.  See 26 C.F.R. sec. 1.6001-1(a), (e), Income Tax Regs.

The Court observes that, generally speaking, other than the receipts (which we do not find credible for the reasons discussed below), Mr. Santos relies entirely on his uncorroborated testimony and non-contemporaneous documents. Mr. Santos fails to explain with any detail, or to substantiate with any contemporaneous documentation or log, the amounts or business character he alleges for the expenditures at issue.  The Court need not accept a taxpayer's self-serving testimony when the taxpayer fails to present corroborating evidence. Beam v. Commissioner, T.C. Memo. 1990-304 (citing Tokarski v. Commissioner, 87 T.C. 74, 77 (1986)), aff'd without published opinion, 956 F.2d 1166 (9th Cir. 1992).  Accordingly, to the extent Mr. Santos has the burden, we do not accept most of his self-serving testimony.

B.    The Commissioner's burdens

The foregoing general rules are subject to three qualifications that are material here:

First, the U.S. Court of Appeals for the Ninth Circuit (to which an appeal in this case would evidently be taken pursuant to section 7482(b)(1)(A)) has held that, in cases involving unreported income, "before the Commissioner can rely on

**[*10]** this presumption of correctness, the Commissioner must offer some substantive evidence showing that the taxpayer received income from the charged activity." Weimerskirch v. Commissioner, 596 F.2d 358, 360 (9th Cir. 1979), rev'g 67 T.C. 672 (1977). The "substantive evidence" here consists of stipulated or undisputed facts showing that the payments remaining at issue came from Mr. Santos's corporation, SESP, and were spent for Mr. Santos's benefit, so the unreported constructive distributions satisfy this standard.

Second, with respect to a taxpayer's liability for additions to tax, section 7491(c) places the burden of production on the Commissioner. This issue is discussed below in part IV.

Third, Rule 142(a) places the burden of proof on the Commissioner "in respect of any new matter"--i.e., "new" in the Commissioner's answer, as opposed to the SNOD. Section 7522(a) requires that the SNOD "describe the basis for * * * the tax due". "A new theory that is presented to sustain a deficiency is treated as a new matter when it either alters the original deficiency or requires the presentation of different evidence." Wayne Bolt & Nut Co. v. Commissioner, 93 T.C. 500, 507 (1989). "A new theory which merely clarifies or develops the original determination is not a new matter in respect of which * * * [the Commissioner] bears the burden of proof." Id. The Commissioner may raise a

**[*11]** new theory as long as the taxpayer receives fair warning of the intention to base an argument upon the new theory and the taxpayer is not unfairly surprised or prejudiced by it. See Pagel, Inc. v. Commissioner, 91 T.C. 200, 211-212 (1988), aff'd, 905 F.2d 1190 (8th Cir. 1990); Estate of Gore v. Commissioner, T.C. Memo. 2007-169, 93 T.C.M. (CCH) 1436, 1446-1447 (2007), supplemented by T.C. Memo. 2007-370.

The Commissioner initially determined that Mr. Santos's deficiency arose from unreported Schedule C income; and Mr. Santos's petition appeared to claim that he was entitled to additional deductions. However, at trial Mr. Santos moved to amend his petition (and the Commissioner did not oppose) to contend that the unreported amounts were gross receipts of SESP and were therefore taxable as SESP's income, not his. The Commissioner conceded the point, but this significant change prompted him to proceed under a new theory--i.e., that Mr. Santos had received constructive dividends from SESP. Even though Mr. Santos's asserted tax liability was smaller under this new theory than the amount stated in the SNOD, the Commissioner concedes that his constructive dividends argument constitutes "new matter" since it required Mr. Santos to present different evidence. See Wayne Bolt & Nut Co. v. Commissioner, 93 T.C. at 507.

[*12] The Commissioner's constructive dividend argument was tried by the implied consent of the parties. See Rule 41(b)(1). However, on brief, Mr. Santos argues that he will be deprived of "due process if * * * [the Commissioner] is allowed to proceed on a new theory first presented at the hearing". We interpret Mr. Santos's argument to mean that he alleges that he was prejudiced because he was unfairly surprised by the Commissioner's constructive dividend argument. We disagree. In the first place, he explicitly consented to the Commissioner's raising that contention. More important, Mr. Santos was the party who moved, on the day of trial, to amend his pleading in a manner that required the Commissioner to revise his position. Mr. Santos was neither surprised nor prejudiced by the Commissioner's constructive dividend argument. Consequently, the Commissioner is permitted to advance his contention of constructive dividends; but as to that contention he bears the burden of proof. He successfully sustained that burden, as we now show in part II.

II. Constructive dividends

Under section 61(a), "gross income means all income from whatever source derived". Section 301(a) provides that distributions from a corporation to its shareholders are treated in the manner provided in section 301(c). Section 301(c)(1) explains that to the extent that a distribution is a dividend (i.e., paid out

[*13] of that corporation's earnings and profits), that dividend is included in gross income.  See sec. 316.  "A constructive dividend arises '[w]here a corporation confers an economic benefit on a shareholder without the expectation of repayment, * * * even though neither the corporation nor the shareholder intended a dividend.'"  Hood v. Commissioner, 115 T.C. 172, 179 (2000) (quoting Magnon v. Commissioner, 73 T.C. 980, 993-994 (1980)).

A.    Constructive distributions

"Corporate expenditures constitute constructive dividends only if (1) the expenditures do not give rise to a deduction on behalf of the corporation, and (2) the expenditures create 'economic gain, benefit, or income to the owner-taxpayer.'"  P.R. Farms, Inc. v. Commissioner, 820 F.2d 1084, 1088 (9th Cir. 1987) (quoting Meridian Wood Prods. Co. v. United States, 725 F.2d 1183, 1191 (9th Cir. 1984)), aff'g T.C. Memo. 1984-549.  "An expenditure generally does not have independent and substantial importance to the distributing corporation if it is not deductible under section 162."  Gow v. Commissioner, T.C. Memo. 2000-93, slip op. at 38 (citing P.R. Farms, Inc. v. Commissioner, 820 F.2d at 1089), aff'd, 19 F. App'x 90 (4th Cir. 2001).  "'[N]ot every corporate expenditure which incidentally confers economic benefit on a shareholder is a constructive dividend.'  The crucial test of the existence of a constructive dividend

**[*14]** is whether 'the distribution was primarily for the benefit of the shareholder.'" Magnon v. Commissioner, 73 T.C. at 994 (citing Loftin & Woodard, Inc. v. United States, 577 F.2d 1206, 1214 (5th Cir. 1978), Crosby v. United States, 496 F.2d 1384, 1388 (5th Cir. 1974), and Sammons v. Commissioner, 472 F.2d 449 (5th Cir. 1972), aff'g in part, rev'g in part T.C. Memo. 1971-145).

### 1. Cash withdrawals

The term "property", as it is used in section 301(a) to describe distributions from corporations, is defined as "money, securities, and any other property". Sec. 317(a). The bank records show--and at trial Mr. Santos acknowledged--that he withdrew $113,846 from SESP's corporate account in 2010. We are persuaded that these withdrawals were made not for business expenditures but for Mr. Santos's personal use.

### a. Amounts deposited into Mr. Santos's personal account

The Commissioner identified deposits to Mr. Santos's personal account that corresponded with certain withdrawals from SESP's bank account, which totaled $33,825. At trial Mr. Santos admitted that he deposited into his personal account approximately $34,000 of the cash withdrawn from SESP's account, and in his post-trial brief he conceded that these withdrawals "were personal", "were not

**[*15]** proven to be for business expenses and therefore * * * [are] constructive income for him."

### b. Amounts corresponding to receipts

The balance of the cash withdrawals (totaling $113,846) after the amounts Mr. Santos deposited into his personal account ($33,825) are subtracted was $80,021; and this difference corresponds closely to the $79,928 that (he says) he used to pay for business-related expenses. At trial he provided receipts purporting to prove this fact; however, these receipts are very problematic, and they indirectly but convincingly underscore the personal character of the withdrawals:

First, the total value of the receipts Mr. Santos provided is $107,476, not the $79,928 he alleges constituted business expenses. He does not specify which receipts compose the $79,928 of supposed business expenses, and he does not explain how he has a greater amount of receipts that are among his supposed business expenses but do not constitute business expenses. It appears that he fabricated the receipts before he settled on his final story and did not notice the discrepancy.

Second, receipts that are ostensibly from different vendors appear to be from the same receipt book. He did not explain this fact.

**[*16]** Third, the chronology of the dates written on the receipts does not follow the sequential order of the preprinted receipt numbers. For example, a receipt numbered 238777 was dated July 2, 2010, for "New Fence our Richmond yard labor", but the subsequent receipt, numbered 238778, was dated December 28, 2010 (more than 6 months later), for a $7,200 payment on an "Excavator CAT-308". And the next receipt, numbered 238779, jumps back 10 months and is dated February 28, 2010, allegedly for a payment on the same machinery.

Fourth, at trial another issue concerning the authenticity of Mr. Santos's receipts was pointed out to him:

> [T]here are the indications on some of the documents that, because of carbon paper use, that some of them are filled out while the others were on top or were underneath them, so that we see impressions from one another showing us, apparently, that they might have been created simultaneously, rather than months apart from each other. In some respects, it seems inevitable that they were prepared at least almost simultaneously because the numbering of the receipts is sequential and the numbers follow one right after another.

Mr. Santos had no explanation.

Mr. Santos's testimony about the authenticity of the receipts was vague and inconsistent, and the receipts raised many more questions than they answered. Rather than substantiating a deductible business purpose for the cash withdrawals, these manifestly bogus receipts revealed a deceptive intention and showed that the

[*17] actual purpose of the cash withdrawals was <u>other than</u> the false proffered business purpose. This is made even clearer by the fact that during 2010 Mr. Santos made only two cash withdrawals, in the amounts of $6,702 and $216, from his personal account, indicating that for his expenditures in 2010 he was principally using cash not from his own account but from the SESP account.

Therefore, we find that the entire amount withdrawn from SESP's bank account in 2010--both the conceded portion that was deposited into his personal account and the portion for which he produced false receipts--created gain for Mr. Santos, did not give rise to deductions by SESP, and was therefore a constructive distribution.

### 2. Electronic transfer

Mr. Santos conceded at trial that he transferred $560 from SESP's bank account into his personal bank account. He made no argument that this electronic transfer served a corporate purpose; and in his post-trial brief he conceded (in explicit response to paragraph 2(B) of the Commissioner's "Ultimate Findings of Fact") that this payment constituted "constructive dividends".

### 3. Personal expenditures from SESP's account

At trial the Commissioner entered schedules into evidence showing that during the 2010 tax year SESP paid $28,917 worth of Mr. Santos's personal

[*18] expenses. Mr. Santos admitted that he used SESP's bank account to pay for all of his groceries in 2010, a gym membership, and other various personal expenses, so the issue is not <u>whether</u> he used the SESP account for personal expenses (he admits he did) but in what amounts.[3] Mr. Santos concedes the personal character of all of those amounts except for $5,867, which is attributable to the following:

### a. Rental payments for his personal residence

The Commissioner provided evidence that in 2010 SESP made two payments of $935 for monthly rental of his personal residence. Generally, under section 262(a) "no deduction shall be allowed for personal, living, or family expenses." Payments by the corporation of the expense for Mr. Santos's personal residence is plainly a personal expenditure on his behalf. Mr. Santos admits the payments, so the Commissioner carried his burden for these amounts.

---

[3]After concessions by the parties (including Mr. Santos's concession of the groceries, the gym membership, and the various other personal expenses), the Commissioner argues that SESP paid $28,917 worth of Mr. Santos's other personal expenses in 2010. Mr. Santos concedes most of that and alleges that only $5,867 was attributable to deductible business expenses. Certain meal expenses of $1,064 were originally allocated to "personal expenses", rather than "meal expenses", in the Commissioner's computations. We have included that $1,064 with the other meal expenses discussed below in part II.A.4.

[*19] However, Mr. Santos contended at trial that these two residential rent payments were business expenses of SESP because he used "[p]robably 30-35 percent" of the house as a home office. In his post-trial brief he stated: "The payments of expenses for Petitioner's expenses for his business office at home are corporate and not personal expenses, including utilities, and pro rata taxes and mortgage expenses. * * * The payments by the corporate [sic] for Petitioner's home office expenses[4] are a business expense[] and not petitioner's individual expense". This contention is unavailing to overcome the Commissioner's showing that these payments were income to Mr. Santos.

---

[4]Despite the references to a "home office", we do not perceive that Mr. Santos is arguing that he should be entitled to a home office expense <u>deduction</u> under section 280A(c)(1)(A)--which allows a taxpayer to deduct certain expenses "to the extent such item is allocable to a portion of the dwelling unit which is exclusively used on a regular basis * * * as the principal place of business for any trade or business of the taxpayer"--to offset this income from SESP's payment of his rent. On his untimely and unsigned return, Mr. Santos reported income and expenses of SESP on a Schedule C, but he did not report on line 30 thereof any deduction for "Expenses for business use of your home", nor did he attach the required Form 8829, "Expenses for Business Use of Your Home". At trial he did not persuade us that any portion of his residence was used exclusively for business purposes. Since he argued only that payment for the office (and not for residential space per se) was a business expense, we perceive that Mr. Santos is not invoking section 119(a)(2), which provides a limited circumstance in which an employer's provision of housing for an employee is excluded from the employee's income--i.e., where the lodging is furnished "for the convenience of the employer" and "the employee is required to accept such lodging on the business premises of the employer as a condition of his employment." Mr. Santos did not allege facts that would have warranted the section 119 exclusion.

[*20] Mr. Santos did not substantiate the "utilities, and pro rata taxes and mortgage expenses", if any, that he bore. He did not even allege (much less make any showing) that the amount of SESP's two rent payments bore any relation to costs allocable to any particular portion of the house. He seemed uncertain when he testified about his home office, and his answers were vague. He did not offer into evidence a floor plan of his house, any pictures of the office, or any documents that would substantiate the percentage of the space used for a home office or would otherwise permit a calculation of the supposed business portion of the housing expense.

In sum, the Commissioner met his burden on this issue. Mr. Santos effectively admitted that he received a personal benefit from these payments (i.e., the provision of rent for the place in which he resided), and his "home office" contentions were not credible.

### b. Payments to Ms. Pardin

Mr. Santos's "personal, living, or family expenses" are not deductible by SESP. The Commissioner showed that SESP made two payments to a Ms. Shirlene Pardin, totaling $3,750; and Mr. Santos admitted that Ms. Pardin worked as a nanny and cared for his newborn son. These undisputed facts carry

**[*21]** the Commissioner's burden of proving that SESP's payments to Ms. Pardin were constructive distributions to Mr. Santos.

To contend that these payments covered a business expense of SESP rather than a personal expense of Mr. Santos, he testified that Ms. Pardin also cleaned his supposed home office.  That contention fails, however, for the same reason as his contention regarding SESP's payment of his residential rent:  He established no business-related use of a home office, and he showed no basis for allocating any portion of Ms. Pardin's compensation to any home office.  He testified that she also worked for SESP, but he did not substantiate or quantify this contention with any evidence, other than his testimony; and he showed no SESP accounting entry or other document indicating that SESP employed Ms. Pardin.  He did not make any serious challenge to the Commissioner's showing that the payments to Ms. Pardin were for personal expenses.

c.    Payments for Mr. Santos's lodging

Through bank records and the testimony that the Commissioner elicited from Mr. Santos at trial, the Commissioner met his burden on this issue to show that Mr. Santos received a personal economic benefit from SESP's payment of $247 for his lodging at the Matterhorn Motel and that it was not a deductible expense.  Section 274(d) provides that no deduction or credit under sections 162

**[\*22]** or 212 shall be allowed for travel expenses (including meals and lodging) unless the taxpayer substantiates these expenses by adequate records or sufficient evidence corroborating his own statements.[5]

Mr. Santos argues that he "stayed at the motel, which is in either Arizona or Texas", when he purchased a truck in Canada and drove the truck back home. His argument contradicts SESP's bank statement, which states that the charge for this motel originated from California. Additionally, Mr. Santos failed to enter a receipt, a log, or any other evidence of this trip into the record. The lodging expense is not a business expense.

### 4. Payments of meal expenses

SESP's bank records show that SESP paid $13,146 worth of meal expenses in 2010. Generally, meals are non-deductible personal expenses. Sec. 262; 26 C.F.R. sec. 1.262-1(a), (b)(5), Income Tax Regs. Mr. Santos admitted at trial that

---

[5]If section 274(d) does not apply, then "the Cohan rule", derived from Cohan v. Commissioner, 39 F.2d 540, 543-544 (2d Cir. 1930), may apply. Under that rule, if a taxpayer adequately establishes that he paid or incurred a deductible expense but does not establish the precise amount, then the Court may in some instances estimate the allowable deduction, bearing heavily against the taxpayer whose inexactitude is of his own making. However, section 274(d) sets stricter substantiation rules that, when they apply, supersede the Cohan doctrine. See Sanford v. Commissioner, 50 T.C. 823, 827-828 (1968), aff'd, 412 F.2d 201 (2d Cir. 1969); sec. 1.274-5T(a), Temporary Income Tax Regs., 50 Fed. Reg. 46014 (Nov. 6, 1985).

[*23] some of the meal expenses were personal, and in his post-trial brief he conceded (in explicit response to paragraph 2(D) of the Commissioner's "Ultimate Findings of Fact") that SESP's payments for these meals constituted "constructive dividends".

In summary, we conclude that the Commissioner met his burden and proved, through bank records and Mr. Santos's own admissions, that Mr. Santos received $156,469 worth of distributions from SESP that were primarily for his personal benefit and not for deductible expenses of SESP. See Meridian Wood Prods. Co., 725 F.2d at 1191; Hood v. Commissioner, 115 T.C. at 179-180.

B.      Character of distributions

The Commissioner contends (and has the burden to prove, for the reason discussed above) that SESP had sufficient earnings and profits to characterize the constructive distributions Mr. Santos received as dividends. See Lerch v. Commissioner, T.C. Memo. 1987-295, 1987 Tax Ct. Memo LEXIS 295, at *59-*62, aff'd, 877 F.2d 624 (7th Cir. 1989). We find that the Commissioner met that burden and that in 2010 SESP's earnings and profits available for distribution were in excess of the amount of constructive distributions Mr. Santos received.

Section 301 explains when a distribution from a corporation is included in gross income, applied against basis, or treated as a gain from the sale or exchange

**[\*24]** of property. See sec. 301(c). A distribution of property made by a corporation to a stockholder is included in the stockholder's income as a dividend to the extent of the corporation's earnings and profits. See secs. 301(a), (c)(1), 316. A dividend is first paid from earnings and profits of the current taxable year, and if the current earnings and profits are insufficient, the dividend is paid from accumulated earnings and profits. Sec. 316(a). Therefore, the $156,469 distribution Mr. Santos received is a dividend only to the extent that the Commissioner can prove that the amount of SESP's earnings and profits available for distribution was equal to or in excess of that amount. See sec. 301(c)(1).

The Code does not define the term "earnings and profits". See sec. 316(a); Henry C. Beck Co. v. Commissioner, 52 T.C. 1, 6 (1969), aff'd per curiam, 433 F.2d 309 (5th Cir. 1970). "[E]arnings and profits is a broad concept 'which the tax law has utilized "to approximate a corporation's power to make distributions which are more than just a return of investment."'" Welle v. Commissioner, 140 T.C. 420, 424 (2013) (quoting Henry C. Beck Co. v. Commissioner, 52 T.C. at 6).

The Commissioner submitted two calculations of SESP's 2010 earnings and profits, which were derived from SESP's 2010 profit and loss statement and Mr. Santos's Schedule C. The Commissioner adjusted both to reflect stipulations

**[\*25]** by the parties, disallowed deductions, and statutorily prescribed methods for calculating earnings and profits. The Commissioner demonstrated that in 2010 SESP's earnings and profits were at least $165,445 (the lesser of its two calculations).

On brief, the only argument that Mr. Santos advanced on the issue of earnings and profits was that the Commissioner "has not proven that the alleged constructive dividends were from earnings and profits, and failed [to] overcome * * * [Mr. Santos's] testimony concerning his use of cash to pay for the corporation's labor and materials." We disagree. The Commissioner demonstrated through two different calculations based on documents Mr. Santos provided that in 2010, SESP's earnings and profits were greater than the amount of constructive distributions Mr. Santos received. Therefore, we conclude that the entire amount of the $156,469 constructive distributions that Mr. Santos received in 2010 from SESP was a constructive dividend. See sec. 301(c)(1).

III.  Filing status

Section 7703(a)(1) provides that the determination of an individual's filing status shall be made as of the close of his taxable year. Mr. Santos admitted that he was unmarried on December 31, 2010, and testified at trial that he did not

[*26] marry until 2011.  Accordingly, under section 1(c) his filing status for the 2010 tax year is unmarried.

IV.    Additions to tax

A.    Failure to file timely under section 6651(a)(1)

Section 6651(a)(1) authorizes the imposition of an addition to tax for failure to file a timely return, unless the taxpayer proves that such failure is due to reasonable cause and is not due to willful neglect.  See also United States v. Boyle, 469 U.S. 241, 245 (1985).  The addition consists of "5 percent of the amount of such tax" for each month of delinquency, "not exceeding 25 percent in the aggregate"; that is, the addition stops accruing after five months.  Sec. 6651(a)(1).  The Commissioner determined Mr. Santos was liable for the addition to tax imposed by section 6651(a)(1) for his failure to timely file his tax return for the 2010 tax year.

Mr. Santos does not dispute that he failed to file a timely return, and this admission satisfies the Commissioner's burden of production under section 7491(c).  After Mr. Santos filed his petition in April 2015, he provided to the Commissioner a copy of a 2010 tax return.  That document was not signed by Mr.

[*27] Santos,[6] but even if it had been, it would not have affected the addition to tax under section 6651(a)(1), since the addition reached its maximum of 25% in 2011 and stopped accruing. See Weaver v. Commissioner, T.C. Memo. 2004-108, 87 T.C.M. (CCH) 1259, 1266 (2004).

The addition to tax applies "unless it is shown that such failure is due to reasonable cause and not due to willful neglect". Sec. 6651(a)(1). At trial Mr. Santos admitted that he knew that he should have filed his return; but he made several arguments for why he did not file his tax return and failed to pay his tax liability--e.g., that he was in the process of purchasing his house, that the revenue from his business declined, that he was unable to collect on debts owed to him by other contractors, that he was defending several lawsuits, and other personal reasons. However, the evidence shows that Mr. Santos did indeed purchase a

---

[6]Generally, any return required to be made under any provision of the internal revenue laws or regulations shall be signed in accordance with forms or regulations prescribed by the Secretary. Sec. 6061(a). The regulations promulgated under section 6061 require that "[e]ach individual * * * sign the income tax return required to be made by him, except that the return may be signed for the taxpayer by an agent who is duly authorized in accordance with paragraph (a)(5) or (b) of section 1.6012-1 to make such return." Sec. 1.6061-1(a), Income Tax Regs. This Court has held that an unsigned return is "no return at all." Vaira v. Commissioner, 52 T.C. 986, 1005 (1969), aff'd on this issue, rev'd and remanded on other grounds, 444 F.2d 770 (3d Cir. 1971); see also Elliott v. Commissioner, 113 T.C. 125, 128 (1999). Accordingly, we find that Mr. Santos never filed a return with the IRS for the 2010 tax year.

[*28] house in March 2011 (the month before his 2010 return was due). His accomplishment of this substantial transaction demonstrates that, contrary to his testimony on this issue, he did have the time, resources, and ability to take care of his business--including filing his 2010 return. On brief Mr. Santos simply states that he is not liable for the addition to tax under section 6651(a)(1) but that, if he is liable, the addition to tax should be based on a liability of only $62,740. We disagree and find Mr. Santos liable for the failure-to-file addition to tax on the basis of the entire amount required to be shown as tax on his return (which amount shall be recomputed in accordance with this opinion).

    B.    Failure to pay under section 6651(a)(2)

Section 6651(a)(2) imposes an addition to tax for failure to timely pay the amount of tax shown on a return. The liability was due to be paid on the unextended due date of Mr. Santos's 2010 return (i.e., in April 2011). See sec. 6151. The addition to tax under section 6651(a)(2) applies only when an amount of tax is shown on a return. Cabirac v. Commissioner, 120 T.C. 163, 170 (2003), aff'd without published opinion, 94 A.F.T.R.2d (RIA) 2004-5490 (3d Cir. 2004). The Commissioner's burden of production with respect to the section 6651(a)(2) addition to tax required him to introduce evidence that a return

**[\*29]** showing Mr. Santos's tax liability was filed for 2010. See Wheeler v. Commissioner, 127 T.C. 200, 210 (2006), aff'd, 521 F.3d 1289 (10th Cir. 2008).

In cases such as this, where the taxpayer did not timely file a return or fails to ever file a return for the year at issue, the Commissioner must introduce evidence that a valid substitute for return was made pursuant to section 6020(b). Sec. 6651(g)(2). He did so by means of the parties' stipulating that he prepared Form 13496, "IRC Section 6020(b) Certification", to which was attached Form 4549-A, "Income Tax Examination Changes", and Form 886-A, "Explanation of Items", showing that the IRS prepared a substitute for return for the 2010 tax year. To constitute a valid substitute for return under section 6020(b), "the return must be subscribed, it must contain sufficient information from which to compute the taxpayer's tax liability, and the return form and any attachments must purport to be a 'return'." Spurlock v. Commissioner, T.C. Memo. 2003-124, slip op. at 27. The 2010 substitute for return contains sufficient information, purports to be a return, and is subscribed as required by section 6020(b).

As with the section 6651(a)(1) failure-to-file addition to tax, section 6651(a)(2) provides that the taxpayer is liable for the failure-to-pay addition to tax "unless it is shown that such failure is due to reasonable cause and not due to

**[*30]** willful neglect".  For the same reasons stated above, we reject Mr. Santos's

"reasonable cause" arguments and find him liable for the section 6651(a)(2)

addition to tax.

To reflect the foregoing and the parties' concessions,

<u>Decision will be entered under</u>

<u>Rule 155</u>.